ANGLADE v. ST. AVIT, *Plaintiff in Error.*

1. **Ante-nuptial Contract**: DEED IN PRAESENTi. An ante-nuptial contract provided that the intended wife was "to have one-third of one-half of the estate of her said intended husband, absolutely and in full property, and in lieu of dower, * * she hereby agreeing to and accepting the same," and further declared that "the said estate hereby given * * is to be in full of dower and any claim upon the estate" of the intended husband. *Held*, that these words operated to vest in the wife, upon the consummation of the marriage, a present estate in fee in one sixth of her husband's lands.

2. **Substitution of Mortgages**: INTERVENING ESTATE: ANTE-NUPTIAL CONTRACT. Where by the terms of an ante-nuptial contract the wife took an estate in fee in part of her husband's lands in lieu of dower, and, after marriage, he satisfied a mortgage upon his lands which was in existence at the date of the ante-nuptial contract with money raised by a new mortgage; *Held*, that the wife's estate was discharged from the first mortgage, and was superior to the second.

*Error to Cape Girardeau Court of Common Pleas.*—HON. H. G. WILSON, Judge.

*Sanford & Brown* for plaintiff in error.

1. The contract did not vest any legal estate in the land. It contained no operative words of conveyance, and without such words *in praesenti*, the plaintiff could not recover. *McKinney v. Settles*, 31 Mo. 544; 2 Wash. Real Prop., p. 619. 2. The estate settled upon the wife was simply an equitable jointure, to be enjoyed by her after her husband's decease for her own life only, in lieu of dower. Coke's Litt., 36, 6; 1 Wash. R. P., (4 Ed.) p. 315; 2 Blackstone, 137; 1 Bish. M. W., pp. 392–4; Stephens' Com., 255; 4 Kent, 54; Burton's Real Prop., 119 p. 357; Atterton Mar. Settlements, 501, 558. 3. The interest of Anglade in the land was never more than the equity of redemption. The court erred in excluding the mortgage and the parol evidence concerning them; the money to satisfy the prior mortgage was obtained by a new mort-

gage, and the mortgages, in fact, constituted but one transaction. *Potter v. McDowell*, 43 Mo. 98; *Reddick v. Gressman*, 49 Mo. 392; *Fontaine v. Boatm:n's Sav. Inst.*, 57 Mo. 557.

*Wilson Cramer* for defendants in error.

SHERWOOD, C. J.—This action of ejectment is the result of a proceeding to quiet title to certain land in Cape Girardeau county. The plaintiffs claim under their mother, whose rights to the land in question, arise under the ante-nuptial contract. Anglade, the father, bought the property which was then incumbered by a mortgage to the county executed by Desbonne, and with this incumbrance still subsisting, the marriage contract was made and the marriage consummated.

We regard the words employed in the ante-nuptial contract, as sufficient to convey the fee to the mother of 1. ANTE-NUPTIAL plaintiffs in one-sixth of the land owned by CONTRACT: deed in praesenti. the husband. The contract among other things provides: "That said Miss Margaret Frazier, the intended wife of said party of the first part, St. Rose Beaubran Anglade, is to have the one-third of the one-half of the estate of her said intended husband, absolutely and in full property in lieu of dower in his estate; she, the said Margaret, hereby agreeing to and accepting the same. * * * * * * * * * That the said one-third of the one-half of the estate of the said St. Rose Beaubran Anglade, hereby given to his said intended wife, is to be in full of dower and any claim upon his estate." Under our statute respecting conveyances, "the term heirs or other words of inheritance," were unnecessary in order to pass the fee, and no contrary intent to pass a less estate is apparent either expressly or implied. (R. C. 1855, p. 355, § 2.) It is claimed for defendant that there are no operative words in the marriage contract of sufficient efficacy to convey the legal estate, and we are

cited to the case of *McKinney v. Settles*, (31 Mo. 544,) where the only words even remotely indicative of intention to pass the fee were the words "sign over." Other portions, however, of the nondescript instrument, contained an obligation to make in the future "a good, sufficient right and title to the said described tract of land." The title of the grantor was then inchoate, and so upon a consideration of the whole instrument, it was held that it did not do more than evince an intention to convey in the future. A broad difference exists between that case and the one at bar. Here the words were plainly intended to operate *in praesenti*, i. e., upon the occurrence of the marriage which took place the same day the contract was executed. It is true more apt words could have been used, but any lack in this particular is not allowed to defeat the manifest intention of the parties. (*McKinney v. Settles, supra.*) "The law," says Mr. Powell, in his notes to Wood's Conveyancing, "is curious and almost subtilizes to devise reasons and means to make assurances and deeds inure according to the just intent of parties and to avoid wrong and injury which, by abiding by rigid rules, may be wrought out of innocent acts." (Wood Conv., 206 note.) Thus words of release may operate as a grant or a covenant to stand seized. *Roe v. Tranmer*, 2 Wils. 75. In the case just cited, Willes, C. J., said: "The judges have been *astuti* to carry the intent of the parties into execution and to give the most liberal and benign construction to deeds *ut res magis valeat quam pereat*. I rely much on Sheppard's Touchstone of Common Assurances, 82, 83, (which is a most excellent book,) where he says when the intent is apparent to pass the land one way or another, there it may be good either way. * * Although formerly, according to some of the old cases, the mode or form of the conveyance was held material, yet in later times, where the intent appears that the land shall pass, it has been ruled otherwise, and certainly it is more commendable to make the intent good in passing the estate if by any legal

means it may be done than by considering the manner of passing it, to disappoint the intent and principal thing which was to pass the land. Osman and Sheafe, 3 Lev. 307. Upon this ground we go." And in the Touchstone it is said " *dedi* or *concessi* may amount to a grant, a feoffment, a gift, a lease ·or release, a confirmation or surrender, and it is in the election of the party to whom the deed is made to use it to which of the purposes he will." (Shep. Touch., Prest. Ed. 91.) To the same effect see 3 Washb. Real Prop. pp. 620, 621 and cas. cit.

It is also claimed for defendant that as Anglade at the time of executing the marriage contract, had only an equity of redemption in the mortgaged prop-erty, no legal estate could possibly pass by reason of that contract. Relative to this, it suffices to observe that the subsequent satisfaction of the mortgage to the county placed the matter in precisely the same position, so far as concerned the right of the wife, as if no incumbrance had existed on the land when the mar-· riage occurred. If a sale had taken place under the orig-inal mortgage, doubtless this would have swept away every vestige of the wife's interest, as she took *cum onere*, but the subsequent satisfaction of that mortgage made her title clear, and that title immediately intervened between that entry of satisfaction and the creation of any new or post-nuptial incumbrance. It is indeed urged that, as the evidence tended strongly to show, that, as each successive mortgage was satisfied by money raised by means of fresh mortgages, until the sale took place under the deed of trust, at which sale St. Avit, the defendant, bought, this series of mortgages ought to be regarded as one transac-tion, as one mortgage. The rule seems to be that when a mortgagor redeems, the redemption should be construed as a payment, he being personally responsible for the debt. (1 Hill Mortg., 542, § 11.) So, where a mortgagor borrows money to pay off a mortgage, and gives a second mortgage therefor, and the first is canceled, the second mortagee has

*2. SUBSTITUTION OF MORTGAGES: intervening estate: ante-nuptial contract.*

no equity to revive and be subrogated to the former mortgage in order to overreach an intervening lien, (Ibid; *Banta v. Garmo*, 1 Sanf. Ch. 383). In *Sandford v. McLean*, (3 Paige, 122,) the doctrine is declared that, "it is only in cases where a person advancing money to pay the debt of a third party stands in the situation of a surety, or is compelled to pay it to protect his own right, that a court of equity substitutes him in the place of the creditor, as a matter of course, without any agreement to that effect. In other cases the demand of a creditor, which is paid with the money of a third person, and without any agreement that the security shall be assigned or kept on foot for the benefit of such a third person, is absolutely extinguished." We regard the same doctrine applicable to an intervening estate as to an intervening lien, being unable to distinguish, in point of principle, the one from the other. There was nothing in this case to take it out of the operation of the above announced general rule. We, therefore, affirm the judgment which plaintiff recovered in the lower court. All concur.

AFFIRMED.