CARR *et al.*, *Executors*, *Appellants*, v. LACKLAND *et al.*, *Executors*.

Division Two, November 29, 1892.

1. **Husband and Wife:** MARRIAGE SETTLEMENT, CONSTRUCTION OF. An antenuptial contract provided that in lieu of dower the wife should receive from the husband on the day of the marriage "securities amounting in the aggregate to the sum of $50,250, specifying certain securities. The securities were given to the wife as agreed, but turned out to be worth much less than their purported face value. *Held* that, as no fraud or misrepresentation was shown, the wife could not recover from her husband's estate the difference between the real and nominal value of the securities.

2. ———: ———: ———. The contract created a separate estate in the securities in the wife, and also provided that "the profits or increase that shall hereafter be gotten, gained or made of the same, by accumulation of interest or otherwise, shall be subject to the control, use and disposition of" the husband during his life. *Held*, that the wife's separate estate was limited to the *corpus* of the securities, and the husband had the right to appropriate the income.

3. ———: ———:———. The intention of the party is to control in construing such contract, and such intention is to be gathered not from single words, passages or sentences, but from a consideration of the whole instrument taken together in its general scope and design.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

AFFIRMED.

*Alex. Martin* and *Hitchcock, Madill & Finkelnburg* for appellants.

(1) First cause of action: The securities in 1871 were of no actual value. The respondents have received credit for any and all subsequent appreciations of said securities, in so far as Mrs. Allen has been benefited thereby; the deficiency of about $17,000 being still unreduced. (2) Does the marriage settlement imply an agreement or covenant on Mr. Allen's part to furnish Mrs. Allen with certain securities in the value of $50,250? (3) The attitude of the contracting parties forbade inquiry on the part of Mrs. Allen, and imposed the highest good faith on the part of Mr. Allen. *Kline v. Kline*, 57 Pa. 120; *Pierce v. Pierce*, 71 N. Y. 154; *Brerer's Appeal*, 92 Pa. 265. (4) Recitals of value are equivalent to express covenants to that effect. *Aspdin v. Austin*, 5 Q. B. 671; Platt on Covenants, 33; Atherly on Marriage Settlements, 27 Law Lib. 454; *Holles v. Carr*, 3 Swan, 638; *Glegg v. Glegg*, 4 Bro. P. C. 614; *Farrall v. Hilditch*, 5 Com. B. (N. S.) 854; Peachey on Marriage Settlements, 373. (5) Did Mr. Allen believe himself, and convey to Mrs. Allen the impression and belief, that he was giving to her securities in the value of $50,250? (6) The presumption is that Mr. Allen intended to give Mrs. Allen an adequate consideration for the release of her marital rights in his estate. When the consideration intended fails, equity decrees compensation to make up the deficiency. Peachey on Marriage Settlements, 373; Atherly on Marriage Settlements, 526, 527; *Speake v.*

*Speake*, 1 Ver. 217; *Parker v. Harvey*, 4 Bro. P. C. 604; *Glegg v. Glegg*, 4 Bro. P. C. 614; 3 Pomeroy on Equity Jurisprudence, sec. 1403; *Johnson v. Johnson*, 30 Mo. 72. It is not necessary to return any part of the consideration to enforce compensation or damages for partial failure of it. *Musser v. Adler*, 86 Mo. 445; *Cummiskey v. Williams*, 20 Mo. App. 606; *Carpenter v. Myers*, 32 Mo. 213; *Voss v. McGuire*, 18 Mo. App. 477. (7) When this settlement is interpreted in the light of surrounding conditions and circumstances of the parties, the intention to give Mrs. Allen $50,250 of securities plainly appears. (8) Unless the securities given amounted to $50,250 in value, they failed to carry out the intention of Mr. Allen, to make a provision for the support of Mrs. Allen to take the place of her rights in his estate. (9) In the language used, something more than description was intended. He declares they are securities. He declares the amount which was unnecessary except to indicate the actual value; as the denomination of each certificate is specifically given in the description of them, the certificates themselves recite that they cost the amount of value imputed to them by Mr. Allen. (10) The meaning of value which attaches to the words "amounting in the aggregate to $50,250" cannot be taken away by the words "to-wit." 2 Abbott's Law Dictionary, 447. The *scilicet* merely particularized the kind of securities which were recited to be of the value of $50,250. (11) The conduct and dealings of Mr. Allen in relation to the securities prove that he regarded himself as bound to furnish Mrs. Allen with securities in the value expressed by him in the settlement. His dealings with the securities considered in detail. (12) Second cause of action: The contract contains the most positive renunciation by Mr. Allen of all claims upon her estate. Recitals to that effect considered. 2 Wash-

burn on Real Property [2 Ed.] 662, 663. (13) Effect
of the clause authorizing Mrs. Allen to appoint to uses.
*Rubey v. Barnet*, 12 Mo. 1; *Russell v. Eubank*, 84 Mo.
82. (14) Power of unlimited disposal repeated and
emphasized. The covenant of Mr. Allen to keep her
separate estate separate and distinct from his own—not
to be subject to his debts. The word "control" cannot
operate to take away the beneficial use from Mrs.
Allen. 2 Washburn on Real Property [2 Ed.] 686.
*Russell v. Eubank*, 84 Mo. 82, does not sustain respond-
ent's construction. (15) When there is repugnancy
between the granting clause and the *habendum*, the
latter must yield. 2 Washburn on Real Property, 652;
*Major v. Bulkley*, 51 Mo. 227; *Donnan v. Intelligencer
Co.*, 70 Mo. 168; Elphinstone, 92. (16) The word
"control," as used in this instrument, is interpreted in
the instrument itself. That interpretation excludes the
meaning of a beneficial use. When use is meant, the
word "use" is added to the word "control." (17) Instru-
ments must be taken most strongly against the writer
of them. Willard on Real Estate, 401; Elphinstone,
94. All doubtful phrases will be solved in her favor so
as to sustain the instrument as a beneficial settlement
in her favor. (18) Instruments of every description
must be construed in the light of facts relating to the
subject-matter and to the condition and circumstances of
the parties. *French v. Carhart*, 1 Comst. 102; *Swick
v. Sears*, 1 Hill, 17; *Jones v. DeLassus*, 84 Mo. 541.
*First.* Mr. Allen had a large estate and had no need
of Mrs. Allen's estate. *Second.* Is it reasonable he
should have retained the use of the estate settled on
Mrs. Allen, coming from himself? He retains it by
employing the word "use." *Third.* Mr. Allen devoted
the use of the Chestnut street house to Miss Eliza Carr
during a portion of the coverture, thereby conceding
the use to Mrs. Allen, and those whom it was her duty

to support. *Fourth.* The answer is an admission of record that Mrs. Allen needed the use of her estate. Neither the answer nor the settlement discloses any covenant or provision on his part to supply the want of her own estate. (19) Mr. Allen, by virtue of the marriage settlement, if construed as giving him the use of Mrs. Allen's estate during coverture, acquired an interest and estate he could not have acquired by marriage alone.

*Boyle & Adams* for respondents.

(1) On first count, plaintiffs' petition, when analyzed, rests upon an alleged covenant in the marriage contract (which, being sued upon, is fully affirmed) that the securities undertaken to be delivered to Mrs. Allen on July 12, 1871, were then of the actual value of $50,250, but the contract when considered contains no such covenant. *First.* The contract is plain and unambiguous, and no extraneous aids are required to get at the intention of the parties. 2 Parsons on Contracts [6 Ed.] star p. 499; *Walker v. Tucker*, 70 Ill. 527. *Second.* Construction does not depend on motives, purposes or expectations of the parties to the contract, as contradistinguished from the plain import of the words used, or upon what either party thought, but upon what they both agreed. *Watrous v. McKie*, 54 Tex. 65; *Brundhild v. Freeman*, 77 N. C. 128. *Third.* The contract must be construed and interpreted as it was made and understood at the time of entering into it, and with a view to the condition of things at that time. *Railroad v. Clopper*, 131 U. S. *Fourth.* There is no different rule for the construction of a marriage contract, when such contract is admitted to be duly executed, valid and binding. Peachey on Marriage Settlements, pp. 456, 457, 523. (2) The detailed description of the certificates or receipts, the

date fixed for delivery thereof, the fact that they were then assignable choses in action of value, that they were by delivery, on the day therein fixed, to immediately constitute a separate estate in equity, that no language guaranteeing or reciting value is employed, that figures representing no round sum, but only the aggregate of the face value of the certificates or receipts are used, and other details of language contained in the contract, show that the subject-matter of the contract was the certificates or receipts therein described, and also show that the parties used the figures $50,250, not as representing actual value, but as descriptive only of said subject-matter, intending thereby to refer to face value only. Such is the plain and natural meaning of the words employed. *Allen v. Drake*, 19 S. W. Rep. (Mo.) 41. Even if there were representations as to value, they could not furnish any ground of action. *Cooper v. Levering*, 106 Mass. 79; Biddle on Warranties in the Sale of Chattels, sec. 330. (3) The plain and natural meaning of the words, as shown in point 2, is supported by authority. The word "to-wit," following the general description of securities, shows that the particular description thereafter following is what the parties intended. 2 Bouvier's Law Dictionary, 613; *Rooke v. Lewis*, 9 Minn. 317. Again, the particular recital of the certificates and receipts which follow the general word "securities" limits the general term to such as are thereafter particularized. *Dart v. Bagley*, 19 S. W. Rep. (Mo.) 311; *Torrance v. McDougald*, 12 Ga. 526; *Grumley v. Webb*, 44 Mo. 444; *Duff v. O'Reilley*, 88 Mo. 422. (4) Courts are disinclined to disturb marriage settlements, much less to make new contracts for parties of the age, wealth and experience of those involved in this case, especially under circumstances similar to those in the case at bar. *Smith's Appeal*, 115 Pa. St. 319; *Kesler's Estate*, 143 Pa. St.

386; *Hosford v. Hosford,* 41 Minn. 245; *McNutt v.*
*McNutt,* 116 Ind. 545; *Appeal of Neeley,* 124 Pa. St.
406; *Ludwig's Appeal,* 101 Pa. St. 535; *Peet v. Peet,*
81 Iowa, 172. (5) In any event the contract sued on
is too doubtful and uncertain for equity to enforce. 3
Pomeroy on Equity Jurisprudence, sec. 1405, and
cases cited; *Strange v. Crowley,* 91 Mo. 287; *Nichols*
*v. Williams,* 22 N. J. Eq. 363; *Bowman v. Cunningham,*
78 Ill. 48. (6) The securities mentioned in the
contract were received on July 12, 1871, in full satis-
faction of the obligation, and plaintiff is concluded
thereby. (7) The provisions of Mr. Allen's will in
favor of his wife disentitle plaintiff to equitable relief.
Atherly on Marriage Settlements, pp. 530, 531.
(8) On second count, statement of the contract sued
on, the facts averred and not averred in the petition,
and the positions of both parties. (9) Elphinstone's
and Washburn's rigid rules governing common-law
conveyances by deed must yield to the modern cardinal
rule governing all contracts, namely, the intention of
the parties must be ascertained. *Long v. Timms,* 107
Mo. 512; *Anglade v. St. Avit,* 67 Mo. 436. (10) If
no marriage contract had been made Mr. Allen would
not only have been entitled to the usufruct, rents and
income of his wife's property, but also to the *corpus* of
the same. *Woodford v. Stephens,* 51 Mo. 443; *Alex-*
*ander v. Lydick,* 80 Mo. 345; *Hart v. Leete,* 104 Mo.
315; *Walker v. Roberts,* 82 Mo. 208. (11) The
marriage contract must be considered as having been
made in view of these common-law rights, and the
purpose to deprive Mr. Allen of them, or any part of
them, must appear either by express terms or necessary
implication, beyond a reasonable doubt. The parties
knew this and contracted accordingly. *Burnley v.*
*Thomas,* 63 Mo. 392; *Bank v. Taylor,* 53 Mo. 449;
Story on Equity Jurisprudence [Redfield's Ed.] sec.

1381. (12) The usufruct, rents and income of Mrs. Allen's estate are not included in the separate estate created for Mrs. Allen; the language of the contract does not include them, and Mr. Allen cannot be deprived of them by mere inference or conjecture. This the parties knew, and contracted accordingly. *Hart v. Leete*, 104 Mo. 315. (13) There may be a separate estate in the body or *corpus* of property without necessarily including the income to arise therefrom. *Rubey v. Barnett*, 12 Mo. 1; *Russell v. Eubanks*, 84 Mo. 82; *Allen v. Allen's Ex'rs*, 73 Ala. 123; 80 Ala. 180. (14) In interpreting any written contract such meaning must be given, if possible, as will give due weight and effect to all its parts and make the whole consistent. *Shickle v. Chouteau*, 84 Mo. 161; *Bent v. Alexander*, 15 Mo. App. 181; *Railroad v. Railroad*, 44 Ohio St. 287. *First.* The separate estate of Mrs. Allen, by the terms of the contract, is "subject, at all times during coverture, to the absolute control and direction of Mrs. Allen," while the "usufruct, rents and income" are "subject to the control" of Mr. Allen. These clauses cannot be reconciled without holding that the first relates to the body of the property only. *Second.* The separate estate of Mrs. Allen under the provisions of the contract must be "in nowise liable or subject to him" (Mr. Allen). This separate estate, then, cannot include the "usufruct, rents and income," which by the terms of the contract are expressly made subject to Mr. Allen's control. (15) Words occurring more than once in an instrument are presumed to be used always in the same sense. 1 Redfield on Wills, 437n, rule 18; Schouler on Wills, sec. 471; *Clavering v. Elliston*, 3 Drury, 472. The parties said, in the first part of their contract, that the words "direction and control of" are the equivalent of the words "power of disposal of;" therefore, the

same words "control of," in the clause relating to "usufruct, rents and income," must be equivalent to the words "power of disposal of." See also Webster's definition of "control." (16) The phrase, "the usufruct, rents and income during coverture of said [parties] only, to be subject to the control of" Mr. Allen, manifests a clear purpose to vest the beneficial use of such usufruct, rents and income in Mr. Allen. Rapalje & Lawrence's Law Dictionary, p. 1319; Wharton's Law Lexicon, 847; Bouvier's Law Dictionary, 773; 2 Abbott's Law Dictionary, 622; 2 Washburn on Real Property, 386; *Arnold v. Brockenbough*, 29 Mo. App. 627; *Russell v. Eubanks*, 84 Mo. 82. (17) The parties by their acts continuously and harmoniously, from the time of their marriage, for sixteen years thereafter, construed the marriage contract, with respect to "usufruct, rents and income," as we now claim. Such interpretation is entitled to great and controlling influence. *Gaslight Co. v. St. Louis*, 46 Mo. 121; *Topliff v. Topliff*, 122 U. S. 121; *Coleman v. Grubb*, 23 Pa. St. 393-409; *Cole v. Society*, 6 N. Eng. (N. H.) 406. (18) There ought to be no recovery in equity on the second count because of Mrs. Allen's acquiescence in the collection and appropriation of the income by Mr. Allen and the circumstances attending the same. Hill on Trustees [4 Am. Ed.] 667, star p. 425; Wells' Separate Property of Married Women, sec. 383; 2 Pomeroy on Equity Jurisprudence, sec. 1103; *Powell v. Hankey*, 2 P. Williams, 82; *Beresford v. Bishop*, 13 Simon, 643; *Roper v. Roper*, 29 Ala. 247, 252; *Towers v. Hagner*, 3 Whart. 48; *Church v. Jacques*, 3 Johns. Ch. 77; *Lyon v. Railroad*, 42 Wis. 548; *McGlinsey's Appeal*, 14 S. & R. 64; *McLure v. Lancaster*, 24 S. C. 273; *Lishey v. Lishey*, 2 Tenn. Ch. 5, 6; *Estate of Hauer*, 140 Pa. St. 42.

MACFARLANE, J.—This is a suit in equity growing out of a marriage contract between Gerard B. Allen and Eugenia L. Carr, executed prior to their marriage, which occurred July 12, 1871.

At the time of making the contract Mr. Allen was a widower, fifty-four years of age, with four children, and Mrs. Carr was a widow, thirty-seven years old, having four children also; each was possessed of an estate,—that of the former valued at $250,000 and that of the latter at $50,000.  In contemplation of marriage they entered into a contract dated the tenth day of July, 1871, in one paragraph of which it was agreed that Mr. Allen would transfer and deliver to Mrs. Carr securities amounting to $50,250, describing in connection therewith two certificates or receipts,—one for $45,000 and the other for $5,250.  In another paragraph it was provided that the property of Mrs. Carr should remain her separate property, subject to her control and disposal, to which a limitation of the use of the usufruct, rents and profits by the husband was added.  The dispute is over these two paragraphs, and they will be set out in full in considering their legal effect and meaning.

Mrs. Carr, party of the second part, in consideration of said marriage and of the agreement and covenants of the said Allen, agreed to accept the foregoing settlement in lieu of dower or other claim on the estate of the said Allen.  The certificates or receipts specified and described in the contract, together with the contract itself, were delivered on the day of the marriage to one Henry G. Paschall, a brother of Mrs. Carr.  After the marriage Mr. Allen took charge of the business of his wife as her agent or trustee.  He moved into her residence, took control of all her estate, and what she afterwards acquired, and appropriated the rents, issues

and profits thereof to his own use until his death, which occurred in July, 1887.

The certificate or receipt for $5,250 turned out to be wholly worthless. These certificates or receipts were afterwards exchanged by Mr. Allen, acting for his wife, for fifty bonds of the St. Louis, Council Bluffs & Omaha Railroad Company, of $1,000 each. These were returned to Mr. Paschall in lieu of the said certificates, August 16, 1875. On the tenth day of March, 1876, Mr. Paschall returned these bonds to Mr. Allen, who told him there was to be a compromise of them. These fifty bonds were exchanged for thirty-three new bonds of $1,000 each, issued by the same company, dated June 28, 1878, and bearing a lower rate of interest. The old bonds were compromised by accepting the new ones at thirty-three and one-third per cent. off. The interest due on the old bonds was also compromised, and the amount agreed upon was retained by Mr. Allen, for which he never accounted.

Mr. Allen died July 23, 1887, leaving a will dated June 11, 1887. His estate was valued at several million dollars. In his will he referred to his wife, their happy married life, and the marriage settlement, and by it gave her in addition the household furniture, carriage and horses, a home for life, and $7,000 per year while she should live.

After the death of Mr. Allen, on the thirtieth of July, 1888, this suit was commenced, by his widow, Eugenia L. Allen, against the executors of deceased. Since the trial in the circuit court the plaintiff has died, and the suit is now prosecuted by her executors, Paschall Carr and Walter B. Carr.

The petition contains two causes of action. The first charges in effect that Mr. Allen intended and covenanted to settle upon plaintiff securities in the

value and amount of $50,250; that the securities indicated by him in the contract were wholly unknown to plaintiff and within the knowledge of Mr. Allen; that said securities were not of the value of $50,250; that they remained under the control of Mr. Allen, who, after the marriage, without her consent, converted them into other securities of the value of $33,500, which she now has; that the consideration for the relinquishment of her dower rights has failed in the sum of $16,750. She asks for the return to her of additional securities in that sum, or for a judgment in that amount, with interest.

In the second cause of action she alleges, in effect, that, by virtue of said marriage settlement, she was entitled to the income, interest and profits of her separate estate; that during his life Mr. Allen received and appropriated the same to his own use. An account of the sums so received and appropriated is asked for.

The defendants in answer to the first count or cause of action allege, in effect, that Mr. Allen, after the solemnization of the marriage, delivered to Henry G. Paschall, brother of Mrs. Allen, the receipts described in the marriage settlement, and that they were delivered to and received by him in full discharge and satisfaction of the obligation of the marriage contract.

To the second count or cause of action the defendants aver that the usufruct and rents of Mrs. Allen's estate were not sufficient in amount for the support and maintenance of her children; that in consideration of such fact the usufruct and rents of her estate were to be given to Mr. Allen; that after the marriage Mr. Allen, with the approval of Mrs. Allen, took upon himself the support and maintenance of the children, and continued to support them during his life. It is nowhere alleged that Mr. Allen was bound by the marriage contract or any other contract to support the

children. It is alleged that Mr. Allen's reception and use of the rents of Mrs. Allen's estate was by her consent and approval.

These defenses in the answer were denied in the reply of plaintiff.

After a trial in the circuit court the bill was dismissed, and plaintiff appealed.

The controversies arising on the first count of the petition grow out of the proper construction to be given to the following provision of the contract: "The said party of the first part further covenants and agrees that, on the day of the solemnization of the said marriage, he will deliver to the party of the second part, or to her agent or attorney for her use, securities amounting in the aggregate to the sum of $50,250, to-wit, a certificate or receipt for payment of $45,000 for purchase of bonds from the Chillicothe & Omaha railroad associates, said bonds to be issued by the St. Louis, Council Bluffs & Omaha Railroad Company. And also a certificate or receipt for payment of $5,250 for purchase of bonds of the St. Louis & St. Joseph Railroad Company, both receipts dated July 12, 1871, and signed by Geo. C. Fabian, secretary and treasurer. Which said securities shall from the delivery thereof as aforesaid be accounted, reckoned and taken as a separate and distinct estate of and from the estate of him, the said party of the first part, and be in nowise liable or subject to him or to the payment of his debts, but the profits or increase that shall hereafter be gotten, gained or made of the same by accumulation of interest or otherwise shall be subject to the control, use and disposition of the party of the first part during his life."

I. It is insisted on the part of plaintiff that the undertaking of Mr. Allen, as properly deduced from the contract, was, that he should deliver to Mrs. Carr

securities of the actual value of $50,250, while defend-
ant contends that he only agreed to deliver the partic-
ular certificates and receipts described in the contract,
and none others.

We think it established beyond question by the
evidence that the securities, as they were called,
specified in the contract, were not, at the date of the
marriage, of the value of $50,250, nor were the bonds
into which these certificates or receipts were afterwards
converted of that value at any time from the dates of
their receipt by Mr. Allen until his death. It' may
then, without considering the evidence in detail, be taken
as an established fact that the securities held by Mr.
Allen as trustee for his wife, whether they consisted in
the certificates, or the bonds into which the certificates
had been converted, were not, at any time during the
marriage, of the designated value. If then the parties
intended by their contract that the securities to be
delivered should be of the actual value of $50,250, a
deficiency would exist, which should be made good out
of the estate of Mr. Allen.

We are asked, in the first place, by counsel for
plaintiff, in construing the contract, to consider the atti-
tude of the contracting parties to each other, the
delicate situation in which the lady is placed in such
circumstances, the unquestioning confidence and trust
she reposes in one into whose keeping she is about to
intrust her future happiness, and apply those principles
of equity which require that where there is trust and
confidence on one part there must be required of the
other the corresponding obligation of the utmost good
faith and fairness. Above all, the court is asked to
move "in obedience to what has been sometimes
termed a cardinal rule; that rule is, to maintain and
enforce marriage contracts as beneficial provisions for
the wife;" and, when a release of her marital rights

has been obtained, to presume that the husband intended in consideration therefor to provide her some other adequate or equivalent means of support.

There is no doubt of the equity of the rules invoked when applied to those cases in which the wife is seeking relief from an unconscionable agreement into which she has, in her confidence, been misled. In such case it is held that the contract and all the circumstances attending its execution should be regarded "with the most rigid scrutiny; and, where the circumstances establish that the woman has been deceived, or induced by false pretenses to enter into the contract, it will be held null and void." *Pierce v. Pierce*, 71 N. Y. 154; *Kline v. Kline*, 57 Pa. St. 120.

This is not such a case. No bad faith on one side or misplaced confidence on the other is either charged or proved. The writing, as embodying the agreement and intention of the parties, untainted by fraud or deceit and uninfluenced by confidence or affection, is before us to be construed and its covenants enforced, and not for cancellation. We know of no rule of interpretation which is peculiar to such contracts. "The court cannot take into consideration the hardship of any individual case, but must judge upon settlements and wills, as it finds them, and as the parties have thought fit to make them." If unambiguous and unimpeached, the contract, as all others, must be understood and enforced according to the common understanding of the language employed. If the language used is ambiguous, then the contract should be construed in the light of the situation of the parties and their relation to each other, the purposes to be attained and all the circumstances attending the transaction. 1 Greenleaf on Evidence, sec. 272; 2 Parsons on Contracts, 449; Peachey on Marriage Settlements, 456; *Smith's Appeal*, 115 Pa. St. 319; *Kesler's Estate*,

143 Pa. St. 386; *Hosford v. Rowe*, 41 Minn. 245; *McNutt v. McNutt*, 116 Ind. 545; *Peet v. Peet*, 81 Iowa, 172.

Is there any ambiguity in this clause of the agreement which calls for construction? It is claimed by counsel that the recital that Mr. Allen would deliver to Mrs. Carr or her agent securities amounting to $50,250 should be construed into a covenant that they would be of that value notwithstanding the subsequent specification of certain receipts or certificates whose aggregate face value amounted to that exact sum. The general proposition that a recital in a contract or deed may be construed as a covenant against the party making it is true, but we think in order to make such a construction it must be very clear, from the language of the whole instrument taken together, that such was the intention of the parties. Usually such recitals are held as descriptive only. *Ferguson v. Dent*, 8 Mo. 668; *Dryden v. Holmes*, 9 Mo. 135; Peachey on Marriage Settlements, 373; *Farrall v. Hilditch*, 5 C. B (N. S.) and note.

We are unable from the words "securities amounting to $50,250," as used in the contract, to spell out even a representation that such securities would be of that value. The word "amounting" never carries with it a definite idea of value; it implies an aggregate or sum of two or more things,—a quantity or a number. The insolvent notes of a bank may amount to more than those that are solvent. Nothing to the contrary appearing, we must presume that the parties used the word in its ordinary sense, meaning thereby that the express or face value of the securities, when added together, aggregated the sum of $50,250.

But to remove all possibility of doubt or question, the parties themselves explain their meaning in the simplest possible manner by immediately particularizing and specifically describing the very securities meant.

No argument can make the intention of the parties clearer. By the clearly expressed terms of the agreement Mr. Allen undertook and agreed to assign to Mrs. Carr the two certificates described and nothing more. These were delivered, and that they were then, or afterwards turned out to be, worth less than their face value is no ground for straining a construction of the contract so as to make it more beneficial to one of the parties. The general terms "securities amounting to $50,250" were restrained and limited by the subsequent particular description of the receipts or certificates intended. *Dart v. Bagley*, 110 Mo. 42; *Torrance v. McDougald*, 12 Ga. 526; *Grumley v. Webb*, 44 Mo. 444; *Guffey v. O'Reiley*, 88 Mo. 422.

II. After the marriage of Mr. Allen and Mrs. Carr the husband took charge of the estate possessed by the wife at the time, and managed the same during his life, receiving and appropriating to his own use the rents, issues and profits thereof. That the property was well managed, kept separate and distinct from his own, an accurate account of it kept, and after his death the *corpus* thereof, increased by some profitable investments, restored to his widow, is not disputed.

By the second count of the petition plaintiff seeks to charge Mr. Allen, as trustee for his wife in the management of her separate property, and to require his executors to account for the rents, issues and profits thereof, received by him during the marriage.

The paragraph of the contract, out of which the complaint in this count grows, is as follows: "Notwithstanding the said marriage, he, the said Gerard B. Allen, his legal representatives or assigns, shall not, nor will, intermeddle with, or have any right, title or interest, either in law or equity, in or to, any of the property, whether real, personal or mixed, of and belonging to

the party of the second part at the date hereof, or in any that she may hereafter acquire or be entitled to, by gift, devise, grant, purchase or otherwise, but the said property shall remain, continue and be to the said party of the second part, or to such uses as she shall by will or other writing think fit and proper to appoint, and the same shall be subject at all times during coverture to the absolute direction and control of the party of the second part, so that the same shall not be in the power or disposal of the said party of the first part; and the said part of the first part covenants to and with the party of the second part, her heirs and assigns, that all and singular her said property, real, personal and mixed, shall at all times be accounted, reckoned and taken as a separate property and distinct estate of and from the estate and property of him, the party of the first part, and be in nowise liable or subject to him or to the payment of his debts, but the same shall and may be ordered, disposed and employed to such person or persons, and manner and form as the said party of the second part shall order and appoint as aforesaid, the usufruct, rents and income during coverture of said ——, only, to be subject to the control of the party of the first part."

Plaintiff in her petition states the construction she places upon this clause of the contract as follows: "And your petitioner says that, according to the true intent and meaning of said contract, the real and personal property of this plaintiff was to remain vested in her and to her separate use as to rents, interests, issues and income, as well as in respect to the principal and body thereof; and that the clause relating to the usufruct, rents and income thereof was not intended to vest in said Allen, and did not operate to vest in him, the beneficial use of said usufruct, rents and income, but that the beneficial use and enjoyment thereof remained

in your petitioner, as of her separate interest and estate; your petitioner at that time being a widow, with four children dependent upon her for support, maintenance and education.''

As has been said, in considering another paragraph of this settlement, the good faith and fairness of Mr. Allen is not called in question, nor is complaint made that Mrs. Allen was in any manner overreached or deceived into making the contract. This paragraph of the agreement must stand as it is written, and effect must be given it according to the way it was understood by the parties making it.

The cardinal rule, in obedience to which all courts should act in the construction of contract and other instruments, is to ascertain and give effect to the intention of the parties. Rules of construction may be invoked for the purpose of ascertaining the intention; but when there is no uncertainty or ambiguity in the language used, no place will be left for the application of technical rules. *Long v. Timms*, 107 Mo. 519; *Anglade v. St. Avit*, 67 Mo. 436.

As has been seen, both parties to the contract were of mature years. Each had four children by former marriages; each was possessed of considerable estate. Mr. Allen was a man of recognized business ability. Mrs. Carr, so far as anything appears to the contrary, had managed her own affairs. She had inherited and received an estate from her father, and had also received property as the widow of a deceased husband. She had some knowledge, therefore, of marital duties and rights. Under these circumstances the contract was made. After agreeing to transfer and deliver to his intended wife securities which turned out to be worth $33,500 the paragraph here in dispute was made.

In the first place the parties clearly recognized the marital rights of the husband under the law as it then

existed in this state, and introduced the agreement by the declaration that, "notwithstanding the said marriage," the husband would not "intermeddle with or have any right, title or interest, either in law or equity, in or to any of the property, whether real, personal or mixed, of and belonging to the party of the second part [Mrs. Carr] at the date hereof." By this part of the agreement, the husband waived his right to reduce to his possession and absolute ownership any part of the property owned by the wife at the time of the marriage, or that she might thereafter acquire. The contract then proceeds to provide for the treatment of said property and the manner in which it should be held, the effect of which was, as between the parties and the creditors of the husband, to create a separate estate in the wife of the said property, free from all the marital rights of the husband. A careful reading of the contract will show that all these provisions are made in reference to the *corpus* of the estate she owned at her marriage, or should acquire thereafter by gift, grant or devise. After the most carefully considered and prepared provisions for securing the estate to the separate use and enjoyment of the wife, and for protecting it from any claims of the husband or his creditors, the paragraph concludes as follows: "The usufruct, rents and income during coverture of said ——, only, to be subject to the control of the first party."

It is insisted by plaintiff that the power of disposition, conferred upon Mrs. Carr by the first clause of the paragraph, carried with it necessarily an absolute gift of the property to her, so far as the husband had rights therein to grant, and all the fruits and effects passed with the property as appurtenant or belonging to it, though not specifically named, and that nothing of the usufruct was left to pass to Mrs. Allen under the

last clause.   We are not disposed to construe one out of his rights under a contract merely because such rights are seemingly inconsistent with rights previously, but by the same instrument, granted to another.   As has been said, the intention of the parties is to control, and "that intention is to be gathered, not from single words, passages or sentences, but from a consideration of the whole instrument taken together in its general scope and design."   *Russell v. Eubanks*, 84 Mo. 86; *Shickle v. Iron Co.*, 84 Mo. 161; *Long v. Timms, supra; Anglade v. St. Avit, supra.*

Now, taking this whole contract and all its parts together, it is clear that the property in which Mrs. Allen was to take a separate estate free from the claims of the husband, with power of disposal, was limited to the *corpus* of the property, and did not include the usufruct.   That the parties intended that the husband should have the "usufruct, rents and income" of the property of the wife is too plainly written in the contract to admit of question.   We are not able to see that the intention so expressed is in contravention of any rule of law, and it must prevail.

III.   It is insisted that these settlements should be enforced as beneficial provisions for the wife, and the court should presume that, when she has released her marital rights in the property, the husband intended to provide her an equivalent for what she has surrendered. We do not think such equitable considerations should control the clearly expressed intention of the parties. The parties were both competent to contract, and made their own agreement; the court should not interfere to make a new one.   Still, looking at all the provisions of this contract, and sixteen years of practical life under it, the results show that it was reasonably beneficial to the wife.   Marriage itself is said to be the "highest

Williams v. The Chicago, S. F. & C. Ry. Co.

consideration known to the law." See authorities cited in *McNutt v. McNutt*, 116 Ind. 545.

Mrs. Allen at the time was a widow, with four children to rear and educate. She had property in her own right, the income of which could barely have been sufficient, in her condition of life, for the support of her family and the education of her children. After sixteen years of married life under the contract, she has her children educated and her estate more than doubled in value. This is the financial result only, and omits altogether the provision made for her by will.

Taking the view we adopt of the contract, it is deemed unnecessary to consider the effect on the right to recover back rents and profits the acquiescence of the wife to their appropriation may have had.

Judgment is affirmed. All concur.