## CRANE, Respondent, v. NOEL AND COHN, Appellants.

### St. Louis Court of Appeals, December 1, 1903.

1. **SUBROGATION: Voluntary Payment.** A volunteer who pays a debt without being requested, and without any interest in the matter, or compulsion to pay in order to protect himself, acquires no right of subrogation by paying, unless he contracts for it with the creditor and becomes, in effect, the equitable assignee of the debt.

2. ——: ——. An agent of an insurance company, who had given bond for the faithful performance of his duties, failed to account for certain sums collected; plaintiff, another agent appointed to succeed the first, as part of the consideration for his appointment, agreed to become surety to the company for the first agent and his bondsmen, and paid the amount due from the first agent, whose sureties had no knowledge of his said agreemnt with the company; there was no assignment of the company's cause of action nor proof of any agreement between plaintiff and the company which would entitle him to sue the first agent's bondsmen for reimbursement of the sum paid on account of the defalcation: *Held,* plaintiff was not subrogated to the company's right of action on the bond.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

REVERSED.

*Lyon & Swarts* and *Thomas J. Hoolan* for appellants.

(1) One who pays the debt of another without the knowledge or request of that other, is a volunteer, and

Crane v. Noel and Cohn.

as such, in the absence of an assignment of the claim to him, is not entitled to subrogation or indemnity. Norton v. Highleyman, 88 Mo. 621; Wolf v. Walter, 56 Mo. 293; Evans v. Halleck, 83 Mo. 376; Price v. Courtney, 87 Mo. 387; Wooldridge v. Scott, 69 Mo. 669; St. Francis Mill Co., v. Sugg, 83 Mo. 476; Anglade v. St. Avit, 67 Mo. 434; Aetna Life v. Middleport, 124 U. S. 534. Bispham on Equity (3 Ed.), par. 337. (2) One claiming to be a surety can not recover indemnity of his principal, unless he became a party to the transaction at the request of the principal. McPherson v. Meek, 30 Mo. 345; Executors of White v. White, 30 Vt. 338; Carter v. Black, 4 Dev. & Bat. Law (N. C.) 425.

*Frank H. Haskins* for respondent.

(1) When one becomes surety for a surety, as between the two sureties the first stands in the relation of a principal to the second. Chapese v. Young, 87 Ky. 476; 24 Am. and Eng. Ency. of Law (1 Ed.), p. 226; Hodgson v. Shaw, 3 Myl. and K. 183; Hall v. Smith, 5 How. U. S. 96. (2) A surety who pays the debt of his principal is entitled to be subrogated to all the rights and remedies of the creditor against the surety's principal. Clark v. Bank, 57 Mo. App. 277; Bank v. Reed, 54 Mo. App. 94. (3) Although in an action at law by a surety against his principal, to recover money paid to the use of the principal, it is in some jurisdictions necessary to show that the surety became such at the request of the principal; still, in an action in equity for subrogation, it is never necessary that the principal should have requested the surety to become such, and even though the surety became such without the knowledge of the principal, when the surety pays the debt he is entitled to be subrogated to the rights of the creditor. Chapese v. Young, 87 Ky. 476; Berthold v. Berthold, 46 Mo. 557; Hough v. Aetna Ins. Co., 57 Ills. 318; Mathew v. Aiken, 1 N. Y. (Comst.) 595; 2 Brandt on Suretyship (2 Ed.),

sec. 298; Sheldon on Subrogation (2 Ed.), secs. 15, 93, and 347.   (4)   The right of subrogation is recognized in other classes of cases where the person whose debt or liability was paid had no contractual relation with the person who paid the debt.   Smith v. Stephens, 164 Mo. 415; Ins. Co. v. Wabash, 74 Mo. App. 106; Hall v. Railroad, 13 Wall. 367.

## STATEMENT.

The petition in this case is in the nature of a bill in equity, and the purpose of the action is to have the respondent subrogated to rights held by the Greenwich Insurance Company as the obligee of a bond made by Felix Levy as principal, and Noel and Cohn as sureties. Levy was appointed agent of the insurance company for the city of St. Louis and gave bond for the faithful performance of his duties, among which was the payment to the company of the premiums collected on policies. The bond was given in 1896. Respondent Crane was appointed agent in succession to Levy in October, 1897, and, as part of the consideration for his appointment, agreed to become surety for Levy and the appellants, his sureties on said bond, and to pay any premiums to the company those parties might fail to pay. The cause below was tried on this agreed statement of facts:

"It is hereby stipulated by and between plaintiffs and defendants that the above entitled cause may be submitted to the court for judgment on the following agreed statement of facts, to-wit:

"That the Greenwich Insurance Company is a corporation, duly incorporated. That on or about the 29th day of December, 1896, it was mutually agreed between the Greenwich Insurance Company, and Felix Levy, that said Felix Levy should act as agent for the said Greenwich Insurance Company in the city of St. Louis, Missouri, and as such agent should issue and sign and deliver policies of insurance in said Greenwich Insurance

Company; collect the premium on the same and properly account for and pay over to said Greenwich Insurance Company all premiums on policies of insurance issued by him and all moneys which might at any time come into his hands or pass under his control as such agent. That before entering upon his duties as such agent, to-wit, on or about December 29, 1896, and as part of the agreement above referred to, Felix Levy made and delivered to said Greenwich Insurance Company a bond signed and sealed by said defendant, Felix Levy, as principal, and by defendants Harry G. Noel and M. A. Cohn as sureties, whereby said defendants bound themselves in the penal sum of one thousand dollars to the Greenwich Insurance Company, the condition of said bond being that if said Felix Levy should duly and properly account for and pay over to said Greenwich Insurance Company all premiums on policies of insurance issued by him, and all moneys which might at any time come into his hands, or pass under his control as such agent, then said bond should be void; otherwise to remain in full force and effect. Said bond being the same one attached to plaintiff's petition in this case.

"That thereafter, defendant, Felix Levy, did as such agent, issue policies in said Greenwich Insurance Company to various parties, the premiums on which policies amounted to the sum of $225.77, and as such agent collected from the said policy-holders the said sum of $225.77, which sum defendant Felix Levy failed to account for to said Greenwich Insurance Company, or to pay over to them and the same has not been paid the said Greenwich Insurance Company by his sureties aforesaid, H. G. Noel and M. A. Cohn.

"That before the said Felix Levy, Harry G. Noel and M. A. Cohn, became indebted as aforesaid, to-wit, on or about October 20, 1897, plaintiff Chas. L. Crane was appointed by said Greenwich Insurance Company general agent for the State of Missouri, and as part of the consideration for the said appointment, plaintiff

Chas. L. Crane agreed and contracted with said Greenwich Insurance Company to become surety for the said Felix Levy, Harry G. Noel and M. A. Cohn, and to pay to the said Greenwich Insurance Company such premiums due on its policies of insurance issued by said Felix Levy, which the said Felix Levy or his sureties Harry G. Noel, or M. A. Cohn failed to pay. But the aforesaid agreement between Chas. L. Crane and Greenwich Insurance Company was made without the knowledge or request of either Harry G. Noel or M. A. Cohn.

"That by reason of the failure of said Felix Levy, Harry G. Noel and M. A. Cohn to pay said Greenwich Insurance Company the sum of $225.77 due as aforesaid and by reason of and pursuant to the contract and agreement aforesaid between Chas. L. Crane and the Greenwich Insurance Company, plaintiff Chas. L. Crane, did pay to said Greenwich Insurance Company the sum of $225.77, and said sum of $225.77 has not been repaid to Chas. L. Crane by Felix Levy, or his sureties, Harry G. Noel or M. A. Cohn, although the same has been demanded of them. But said payment of $225.77 by Chas. L. Crane to Greenwich Insurance Company was made without the knowledge or request of either Harry G. Noel or M. A. Cohn, and it is further admitted by both parties that defendants, Harry G. Noel and M. A. Cohn, were not notified of the said defalcation of Felix Levy, until June 1, 1901."

The action was originally brought against Levy as well as the appellants, but was subsequently dismissed as to him. Judgment went against Noel and Cohn, and they appealed.

GOODE, J. (after stating the facts as above).— The judgment in this case is assailed from the premises that the agreed facts show the respondent was a volunteer in becoming surety and in making good to the insurance company any defalcation that occurred during Levy's agency.

The agreed statement of facts says respondent was appointed agent for the insurance company prior to the accrual of Levy's indebtedness; that he contracted to become surety for the latter and the appellants, and to pay whatever premiums they failed to pay; but that appellant Noel and Cohn had no knowledge of the arrangement. It is not stated whether Levy knew or was ignorant of it. Neither is it stated that the insurance company asked respondent to become surety or made his appointment as agent dependent on his doing so.

Choses in action are now assignable and respondent could have purchased the demand of the insurance company against Levy and the appellants. That fact is pressed on us; but in appraising its force we must remember that choses have always been assignable in equity, and that the pale of the right of subrogation was fixed by chancery courts with their assignability and all the implications which flow from that equity rule in mind. No strength is lent to respondent's case by the change in the law rendering choses assignable and permitting assignees to sue on them. But the argument is persuasive that, as equity tolerates the assignment of a debt, it should also accord the full benefit of all securities held by a creditor to a party who, instead of buying the demand and taking an assignment of it, voluntarily binds himself as surety for the demand and afterwards pays it. The barrier against the right of subrogation in such instances is technical but firmly established. Subrogation is a remedy made use of by courts of equity as an efficient aid to justice, and in the main does not depend on a contractual obligation; though a man may acquire the right to a conventional subrogation by contract. This happens when one liquidates a demand secured by lien or guaranty and takes an assignment of it, or agrees with the creditor that any security held by the latter shall continue available for the collection of the demand. No proof exists that an agreement was made between Crane and the insurance company which would

entitle the former to sue Levy's bondsmen for reimbursement of the sum paid to the company on account of Levy's defalcation.   Yet we can find none but a technical reason why Crane should not have the same right to sue on the bond that the company had before it was paid; and to decide in favor of Crane's right might advance the remedy along the path of justice.   But the rule has ever been that a volunteer who pays a debt without being requested, and without any interest in the matter or compulsion to pay in order to protect himself, acquires no right of subrogation by paying, unless he contracts for it with the creditor; that is, becomes, in effect, an equitable assignee of the debt.   Bunn v. Lindsay, 95 Mo. 250; Sheldon, Subrogation (2 Ed.), sec. 3. One may think of a stranger paying a debt of some one else in circumstances that would constitute an officious intermeddling with the debtor's business and afford the payer no good claim in equity to the securities held by the creditor.   If the test of the right to be substituted was the purpose for which payment is made, as being a purpose laudable in itself and including an intention to preserve the debt and obligations collateral thereto, for the benefit of the payer, instead of extinguishing the debt, Crane's standing would be better.   But the test is not the motive of the party who pays, but whether or not he acted as a volunteer.   Whether he did or not is sometimes difficult to say.   But according to the decisions in this State and the great weight of outside authority, Crane's status, when he bound himself as surety for Levy and these appellants, was that of volunteer. That Noel and Cohn knew nothing of his act is certain. It does not appear that Levy knew of it, or that the insurance company required or even requested it.   For aught that is disclosed, it was an unnecessary step taken by him on his own motion.   It was not a compulsory one, we know.   Hence, if he desired to stand in the shoes of the insurance company in the event he had to pay money on account of his self-imposed suretyship, he

ought to have stipulated that Levy's bond should be assigned to him or enure to his benefit.  We find precedents in Missouri, and elsewhere, too, whose force we are unable to escape, as they look to be undistinguishable, on principle, from this case.  Bunn v. Lindsay, supra;  Norton v. Highleyman, 88 Mo. 621;  Price v. Courtney, 87 Mo. 387; Evans v. Halleck, 83 Mo. 376; Francis Mill Co. v. Sugg, Mo. 476; Woolridge v. Scott, 69 Mo. 669; Anglade v. St. Avit, 67 Mo. 434; Wolff v. Walter, 56 Mo. 293; McPherson v. Meek, 30 Mo. 345; Kleimann v. Geiselmann, 45 Mo. App. 497, 114 Mo. 437; see, also, Aetna Life Ins. Co. v. Middleport, 124 U. S. 534; Excrs. White v. White, Trustee, 30 Vt. 338; Carter v. Black, 4 Dev. & Bat. Law 425; Shinn v. Budd, 14 N. J. Eq. 234; Sheldon, Subrogation (2 Ed.), 240; 24 Am. and Eng. Ency. Law (1 Ed.), 281.   Some of those cases presented a stronger equity in favor of the parties asking subrogation than this one shows for Crane; because those parties assumed and discharged liens under conditions requiring them to do so, or suffer loss by legal enforcement of the liens.   We refer particularly to Woolridge v. Scott; Evans v. Halleck;, Norton v. Highleyman, and Kleimann v. Gieselmann.   In the case last cited, money had been loaned to a widow and secured by a deed of trust on land devised to her by her deceased husband, to lift a prior deed of trust executed by the husband.   The loan was made on the supposition that the widow was the devisee of the fee; but she turned out to have only a life estate, subject to the homestead estate of minor children of the deceased.   As the money went to discharge the first lien, and, therefore, for the benefit not only of the widow as life tenant, but of the children as owners of the fee, the assignee of the note given for the loan claimed to be entitled by subrogation to the lien of the discharged deed of trust.   But the lender was held to be a mere volunteer and relief was denied.   The other cases are of the same tenor.

In Carter v. Black, 4 Dev. & Bat. (N. C.) 425, the facts were like we have here. A bond signed by a principal and surety was offered to the sheriff of a county in satisfaction of certain executions. The parties on the bond were non-residents of the county and the sheriff refused to accept it without resident security. Thereupon Carter, the plaintiff, bound himself as surety on the bond in order to save the execution debtor. Carter had to pay and afterwards sued the principal and original surety on the bond. He was ruled to be a mere volunteer who had become surety at the instance of the holder of the bond instead of the maker. But Crane does not occupy as favorable a position as Carter did; for the former became surety, so far as we know, on his own motion.

We have been cited by respondent's counsel to certain decisions supposed to have accorded the right of subrogation on facts similar to those before us. Mathews v. Aiken, 1 N. Y. 595; Chapeze v. Young, 87 Ky. 476; Hough v. Ins. Co., 57 Ill. 318. The last case does not aid the respondent's contention; for the party claiming subrogation was bound in the first instance to pay the debt. Some of the reasons given in Mathews v. Aiken support the position of the respondent; but it is to be noted that there were valid grounds, according to the settled principles of the law of subrogation, for granting relief to the plaintiff in that case.

The opinion in Chapeze v. Young favors the respondent.

Those cases, in so far as they go beyond the current of authority, seem to us to logically extend the equity of subrogation. But the decisions of the courts of this State, as well as the overshadowing weight of authority elsewhere, constrain us to deny the relief which the respondent prays. The judgment is, therefore, reversed. *Bland, P. J.,* and *Reyburn, J.,* concur.