SAUNDERS, *Appellant*, v. SAUNDERS *et al.*

Division One, June 8, 1898.

1. **Jointure**: DEED IN CONSIDERATION OF DOWER: DIVORCE. S. conveyed land to C. for life, and C. conveyed it to S.'s wife for the expressed consideration of a relinquishment of any claim to dower in S.'s estate. Afterward she left him, and he secured a divorce by default, alleging desertion, and brought this suit to set aside the deed. *Held*, that the jointure provided for the wife by this instrument, was not forfeited by her subsequent conduct, and the deed could not be set aside.

2. ———: ———: VESTED ESTATE: DIVORCE. Such a deed creates a jointure, which is a vested interest in land. Such an interest is not divested by such subsequent conduct in the wife as to entitle the husband to a divorce on the ground of abandonment, and the deed to her can not be set aside on that ground.

3. ———: ———: ———: PURCHASER. Such divorced wife is not affected by section 4508, Revised Statutes 1889, since she asserts no rights "under and by virtue of the marriage," but claims as a *purchaser* under a duly executed deed for a valuable consideration.

4. ———: ———: ———: ADULTERY. Nor is it decided in this case what effect a divorce on the ground of adultery would have on such a jointure, under section 4532, which bars "jointure or dower" where she has been guilty of adultery, because the ground of divorce in this case was desertion.

5. ———: DISCUSSED. The subject of jointure is discussed at length in this opinion.

*Appeal from Jackson Circuit Court.*—HON. JAMES H. SLOVER, Judge.

AFFIRMED.

*John A. Sea* for appellant.

(1) Whether this be considered simply as a contract, based on a valuable consideration, passing from

defendant to plaintiff, for a conveyance of lands; or whether it be considered as a jointure, providing a settlement for defendant, Matilda Saunders, as wife of plaintiff, in lieu of her dower right in plaintiff's estate, upon either view, the plaintiff is entitled to the relief prayed for the following reasons: *First.* If contract, the whole consideration therefor has failed both in law and equity. *Second.* The contract has no force or effect until death of Saunders, and his wife had elected to take provisions of same in lieu of her dower. *Third.* It was a *nude pact* till death of plaintiff and election by his widow furnished necessary consideration. *Fourth.* The contract, if a contract, was made upon the expectancy, understanding and implied condition that defendant Matilda should continue the wife of plaintiff till his death, and by so doing be entitled to dower in his estate. Her right to dower in his estate, at time of his death and her acceptance of this land in lieu thereof, was the only consideration for said contract and conveyance. This condition she has, by her own act, violated, and the entire consideration for contract and transfer has failed. (2) *First.* If jointure, she has forfeited all right thereto, *first,* by law; *secondly,* by her own wrongful acts. *Second.* Her rights in said land are acquired "under and by virtue of said marriage." They are simply dower rights, admeasured and set off by the parties during life of same. *Third.* She, by her own act, has relieved herself from all the burden and obligations as such and forfeited all her rights as wife under section 4508, Revised Statutes 1889, whether rights are dower or otherwise.

*Karnes, Holmes & Krauthoff* for respondents.

(1) This is really a suit between the grantor and grantee in a deed in which there is a consideration

recited of one dollar and other valuable considerations and the receipt acknowledged by the grantor. Under these circumstances, the appellant herein can not be heard to say that there was no valuable consideration for this conveyance for the purpose of destroying these deeds. 3 Wash. on Real Prop. [5 Ed.], pp. 398, 401; *Grout v. Townsend*, 2 Hill, 554; *McConnell v. Brayner*, 63 Mo. 461; *Allen v. Kennedy*, 91 Mo. 324; *Wood v. Broadley*, 76 Mo. 23; *Holt v. Holt*, 57 Mo. App. 272; *Jackson v. Railroad*, 54 Mo. App. 636; *Hollocher v. Hollocher*, 62 Mo. 267; *McCrea v. Purmont*, 16 Wend. 465. (2) The record shows that both of these deeds were regularly signed and acknowledged and duly filed for record and recorded in the office of the recorder of deeds of Jackson county, Missouri, on the same day as their execution. In the absence of any evidence to the contrary, this establishes their delivery. *Lumber Co. v. Anderson*, 13 Mo. App. 429; *Kane v. McCown*, 55 Mo. 181. (3) The question involved must be solved largely by the provisions of our own statutes, and we would invite attention to sections 4530, 4531, 4532, 4527 and 4528, Revised Statutes 1889. (4) A settlement on the wife by the husband is not affected by the divorce. 2 Bish. on Mar. and Div., sec. 717; *Dalton v. Bernardston*, 9 Mass. 200; *Fitzgerald v. Chapman*, 1 L. R. Ch. Div. 563; *Benton v. Sturgeon*, 2 L. R. Ch. Div. 318; *Evans v. Carrington*, 2 DeG. I. & J. 481; *Ilgenfritz v. Ilgenfritz*, 116 Mo. 429; *Kinzey v. Kinzey*, 115 Mo. 496; *Schuster v. Schuster*, 93 Mo. 438; *Gilliland v. Gilliland*, 96 Mo. 522; *Price v. Kane*, 112 Mo. 412; *Seibold v. Christman*, 75 Mo. 308. (5) The interest created by this conveyance was an estate in land. 2 Met. (Ky.) 408–409; 3 Met. (Ky.) 152. And if an estate in the defendant, then it must be claimed on the ground of forfeiture, and forfeitures on

conditions subsequent are not favored in the law. *Morrill v. Railroad*, 96 Mo. 174.

MARSHALL, J.—In November, 1888, plaintiff and defendant were married. They were both old, and each had adult children by former marriages. They boarded with one of the adult children of the wife. In August, 1890, the husband conveyed certain land to defendant Crump (reserving during his life all rents, issues and profits arising therefrom) the consideration expressed in the deed being $1 "and other valuable consideration" and thereupon, cotemporaneously Crump conveyed the property to the wife, the consideration being declared in the deed to be "that the party of the first part in consideration of the relinquishment and release of all claims of dower of said Matilda Saunders in and to the personal and real estate of Samuel M. C. Saunders, said relinquishment and release being evidenced by acceptance of this deed and of the sum of one dollar to him paid by said party of the second part, the receipt of which is hereby acknowledged." The relation between the plaintiff and his wife's children became unpleasant, so he built a house on his own land and wanted his wife to go there and live with him, which she refused to do. In June, 1892, he left her, and in December, 1893, began a suit for divorce on the ground of desertion, and obtained a decree by default. Thereupon he instituted this action to cancel the deeds aforesaid. On the trial these facts were admitted. It was also admitted that plaintiff and Crump, if present, would swear that no money was paid as recited in the deeds and that no consideration was intended except the relinquishment of dower, but defendant objected to the testimony as immaterial. The court did not rule upon the objection. There was a decree for defendant, and plaintiff appealed.

I.   The legal proposition to be decided is whether the jointure thus provided for the wife, after marriage, has been forfeited by her conduct.

The plaintiff contends that the real consideration for the deeds was the relinquishment of dower, to which she would not be entitled until after the husband's death, at which time she would have the right to elect between dower and jointure, and an implied promise to continue to be his wife until his death, and that as she' broke her implied promise and plighted troth the consideration for the jointure has failed, and as her right to dower was cut out, under the statute (R. S. 1889, sec. 4526), by the husband obtaining the divorce, there was no election between dower and jointure left, and hence she lost all right to both. It is further contended by plaintiff that there is a difference between a jointure created by an antenuptial contract, the marriage in such case furnishing the consideration for the contract, and which is therefore not affected by the subsequent conduct of the wife, and a jointure created after marriage, where it is claimed her rights are only inchoate during coverture and require the ratification, by election, of the wife, after the husband's death.

On the other hand it is contended that there is a difference between jointure and dower, in this, that dower is barred by divorce obtained by the husband, whereas jointure is a vested interest in the wife, founded upon a valuable consideration at the time of its creation, which is not affected by the subsequent misconduct of the wife and hence is not barred by divorce.

To correctly understand the question to be decided it is necessary to bear in mind the nature of dower and of jointure. "It has been stated that curtesy is founded on positive institutions; but dower is not

only a civil, but also a moral right.　Thus Sir JOSEPH JEKYLL says 'the relation of husband and wife, as it is the nearest, so it is the earliest; and therefore, the wife is the proper object of the care and kindness of the husband.　The husband is bound by the law of God and man to provide for her during his life; and after his death the moral obligation is not at an end, but he ought to take care for her provision during her own life.　This is the more reasonable, as during the coverture, the wife can acquire no property of her own. If before her marriage she had a real estate, this by the coverture ceases to be hers; and the right thereto, while she is married, vests in her husband.　Her personal estate becomes his absolutely, or at least is subject to his control; so that unless she has a real estate of her own (which is the case of but few) she may by his death be destitute of the necessaries of life, unless provided for out of his estate, either by a jointure or dower.　As to the husband's personal estate, unless restrained by special custom, which very rarely takes place, he may give it all away from her.　So that his real estate, if he has any, is the only plank she can lay hold of to prevent her sinking under her distress. Thus the wife is said to have a moral right to dower.' ". Greenleaf's Cruise, sec. 6, ch. 1, Title VI, Dower, p. 166.

In order to entitle a woman to dower at common law it was necessary that she should be his wife at the date of his death.　A divorce *a mensa et thoro* did not bar her dower, for that did not dissolve the marriage— it only authorized them to live separately, but left the obligation on the husband to support her.　Such a divorce on the ground of the wife's adultery did not dissolve the marriage and therefore had no effect on her dower rights.　Likewise the husband's curtesy was not forfeited by his leaving his wife and living in adul-

tery with another.    It was not until the enactment of
the statute of Westminster 2, chapter 34, that adultery
barred dower in England.    Greenleaf's Cruise, secs. 16
and 17, ch. 1, Title VI, Dower, p. 169, 170.

Jointure is a settlement by the husband on the
wife, either before or after marriage.    It is said to be
"a competent livelihood of freehold for the wife, of
lands or tenements, etc., to take effect presently in
possession or profit after the decease of her husband
for the life of the wife at least."    Sometimes it is called
legal, as when made before marriage, and sometimes,
equitable, as when made after marriage.    Originally it
took the form of a conveyance to husband and wife
during their joint lives, and after the husband's death
to the wife.  5 Am and Eng. Ency, Law, p. 915, and cases
cited.    Prior to 27, H. 8, jointure did not bar dower,
but that statute expressly made it a bar.    To make a
perfect jointure within that statute six elements were
necessary:    "*First*, it must take effect for her life in
possession of profit presently after the decease of her
husband; *second*, it must be for the term of her life or
a greater estate; *third*, it must be made to herself and
to no other for her; *fourth*, it must be in satisfaction
of her whole dower and not of part of it only; *fifth*, it
must be expressed or averred to be in satisfaction of
her dower; and, *sixth*, it may be made either before
or after marriage."    Coke on Litt. L. 1 C. 5, sec. 41,
36*b*.

Dower is a mere inchoate right derivable from the
marriage and is within the rule whereby non-vested
interests are ended by divorce.  2 Bishop on Mar.,
Div. & Sep., sec. 1634, and cases cited.    But jointure
is a vested interest in land, and the wife takes it as
*purchaser.  Campion v. Cotton*, 17 Ves. 267; *Verplank
v. Sterry*, 12 Johns. 535; *Herring v. Wickham*, 29 Gratt.
628; *Jones' Appeal*, 62 Pa. St. 324.    Being a vested

and not a mere inchoate right, a divorce, even *a vinculo*, granted to the husband for the fault of the wife, does not divest the title. *Richardson v. Richardson*, 75 Me. 570.

Under our statute all divorces are *a vinculo*, and the reasoning employed in the English cases where the divorce was only *a mensa et thoro* do not apply. We have long had a provision in our divorce statutes that, "In all cases of divorce from the bonds of matrimony, the guilty party shall forfeit all rights and claims under and by virtue of the marriage." R. S. 1889, sec. 4508. Ever since February 5, 1825 (R. L. 1825, p. 333), we have had upon our statute books the provisions contained in sections 4526 and 4532, Revised Statutes 1889, the former providing that, "If any woman be divorced from her husband for the fault or misconduct of said husband, she shall not thereby lose her dower; but if the husband be divorced from the wife for her fault or misconduct, she shall not be endowed," and by the latter that, "If a wife voluntarily leave her husband and go away and continue with an adulterer, or after being ravished, consent to the ravisher, she shall be forever barred from having her *jointure* or *dower*, unless her husband be voluntarily reconciled to her and shall suffer her to dwell with him." It will be observed that the literal language of section 4526 only bars her dower when she is the guilty party, but that section 4532, bars her "jointure *or* dower" where she has been guilty of adultery. In the case under consideration the husband was divorced for the desertion of the wife and not for her adultery, so, it is not necessary to decide whether under section 4532 a woman is barred of her jointure (the statute makes no distinction between such an estate created before and one created after marriage) when her husband is divorced from her for her adultery. It is plain that defendant's rights are not affected

by section 4532, for though the divorce was for her fault or misconduct, that statute only bars dower or jointure in case of adultery or abiding with her ravisher. It is also clear that section 4508 does not affect her, for she is asserting no rights "under and by virtue of the marriage," but is claiming as a *purchaser* under a duly executed and delivered deed.

Somewhat analagous questions have been adjudicated by this court. Thus in *Roberts v. Walker*, 82 Mo. 200, there was a post-nuptial contract, creating a jointure for the wife, which she ratified after her husband's death, and when she afterward claimed her homestead rights, they were denied her—thus recognizing a post-nuptial contract of this character. *Schuster v. Schuster*, 93 Mo. 438, was a case where the husband's money was invested in land, but the title was put in the wife. He claimed it was in trust for him, while she claimed it was intended as a settlement or jointure for her. She obtained a divorce, and he sued in ejectment for the land. It was held that *prima facie* it was a settlement upon her, and not a resulting trust as it would have been if the deed had been made to a stranger, and construing section 2182, Revised Statutes 1879 (the same as sec. 4508, R. S. 1889), it was said, "This section is clear, and meets the case in hand, and, by it, he forfeited whatever marital interest he may have had in the property." It should be observed, however, that in that case the husband was not asserting any interest "under and by virtue of the marriage," but was seeking to establish that the former wife held the title as a mere trustee for him. So that while that case was properly decided, it is not to be taken as a binding interpretation of the true meaning of section 4508, Revised Statutes 1889, nor as an authority in the case at bar. In *Kinzey v. Kinzey*, 115 Mo. 496, it appeared that the husband after marriage purchased property

with his own means and had it conveyed to his wife and to the heirs of her body begotten by him. During his absence from home she committed adultery with the hired man on the place, and repeated the offense, at intervals, afterward. The husband procured a divorce because of the adultery of the wife, and then brought suit to recover the property. BRACE, J., for the court, referred to sections 4508 and 4500, and said: "While the title of Mrs. Kinzey and her children to the property in question was acquired during the marriage and indirectly from her husband and she was found guilty of adultery in the divorce suit, yet these facts did not operate a forfeiture of any of her rights to the property, for the simple reason that those rights were vested rights, acquired by grant and not 'under and by virtue of the marriage,' and upon which the sentence of divorce had no effect. Bishop's new work on Marriage and Divorce, sec. 1623."

After refusing to consider it a case of fraud by the wife on the husband based upon their confidential relations, and saying it was simply a "breach of the confidence that the plaintiff then had that the defendant was and would continue to be to him a faithful wife," and noting the fact that the conveyance was not procured by her solicitation or undue influence, but was evidently intended by the husband as a suitable provision for his wife and her children, Judge BRACE, said: "It may be true that at the time this settlement was made Kinzey may have thought that, as his wife always had been, so she would thereafter always continue to be, faithful to her marital vows, and that if he had known that she would thereafter prove false to them he would not have made the settlement upon her and her children that he did make. But that he was mistaken in this reasonable expectation, as subsequent events proved, affords no pretext

for the intervention of a court of equity to deprive her of property which he had, upon good consideration, theretofore voluntarily settled upon her, and certainly none to deprive his children by her of the property settled on them. A court of equity can and will interfere to restore to a party injured, property which has been obtained from him by imposition or deceit. But in this case no property was obtained from the plaintiff by imposition or deceit. He was simply mistaken in the moral worth and virtue of one of the objects of his bounty. From the consequences of such a mistake of judgment, a court of equity can not relieve him.'' Omitting the adultery feature and the limitation to the heirs of the wife's body begotten by him, the foregoing might well have been written for the case at bar. *Ilgenfritz v. Ilgenfritz*, 116 Mo. 429, was a case where the husband with his own means, purchased property and caused the title to be put in his wife's name. They disagreed and separated. Upon a representation by him to her that it was necessary to sell the property to get money to support her and her children, and upon his assurance that he would invest the proceeds in a business with his brother, and upon his giving her a written agreement to pay $30 a month to her father as her trustee for her use, she conveyed the property to her husband's brother. He failed in all respects to carry out the agreement. She sued to recover the property and this court held that the original conveyance to her was intended as a settlement upon her for her benefit, which he was powerless to revoke, canceled her deed to his brother and reinvested the property in her.

These cases establish the rule that there may be a jointure created after as well as before marriage, just as Lord Coke said was the case in England after the enactment of 27 H. 8. The consideration moving to

the husband is to make a suitable provision for his wife and her renunciation of her dower rights, and the fact that it is a vested estate and not a mere inchoate right takes it out of the rule that a divorce for the fault of the wife bars dower.   The consideration being good at the time the estate is created, does not fail because the husband is disappointed in his expectations that she will be a faithful wife.   If any husband does not care to assume that risk the remedy is in his own hands, he has only to refuse to make a jointure, and leave his wife to get dower or be barred from it as her conduct under the law may determine.   One of the actuating motives of a husband to provide for his wife by jointure, is to discount the risk of failure or loss in business and the possibility of leaving his wife penniless. Another is that he may thereby bind his wife to a certain share in his estate, as it was when the jointure was made, and cut her out of what might be a greater share, if she took dower.   This can be accomplished by an antenuptial settlement. . But our statute (R. S. 1889, sec. 4530) saves the privilege of election between jointure and dower to her, if the agreement is made after marriage or if she made the agreement before marriage and during her infancy.   In no case, however, is her jointure barred under our statute or at common law because of a divorce granted her husband for her fault.

The reason of the rule at common law which drew a distinction between such contracts made before and after marriage, and preserving an election to the wife if made during coverture, was that the wife was incompetent to contract during coverture with her husband or any one else.   The election preserved by section 4530, Revised Statutes 1889, has been on our statute books since 1825, and although our changed and enlightened conditions have wiped out many of the old

common law fictions as to the relations of husband and wife, the legislature has not changed this ancient provision. As will be seen, however, by the case herein referred to, the courts have recognized the validity of and enforced these post-nuptial settlements, necessarily recognizing the right of a wife to contract in reference thereto, and the duty and obligation of the husband to observe his undertakings in this regard. The reason of preserving the privilege of election to the wife may have been to prevent the husband from overreaching the more inexperienced wife, by obtaining from her a contract to take a share of his property that seemed fair at the time the contract was made, but which might turn out to be much less than her dower interest would amount to. Legislators—aggregations of men—have always been regardful of the rights of married women and infants, and courts have not been less jealous in dealing with their rights. Section 4530, however, does not apply to a case where a divorce has been granted the husband for the fault of the wife, for her dower rights being cut off by sections 4508, 4526 and 4532, she will have no election under section 4530. But inasmuch as her jointure is not barred or forfeited (at any rate not in a case like this) by statute and was not barred at common law, because of a divorce granted her husband for her fault, she has a right to retain that.

The husband discounted the chances. He made his election. His confidence was misplaced, but no fraud was perpetrated on him by her, and it can not be said there has been a failure of consideration, nor, under the decisions, that it was a mere *nudum pactum*. It is a good vested interest which it is not in his power to revoke, and which a court of equity has no power to divest.

For these reasons the judgment is affirmed. All concur.