ANNA BUFE, Respondent, v. HENRY BUFE, Extr. of FRANZ WM. BUFE, Deceased, Appellant.

**St. Louis Court of Appeals, April 23, 1901.**

1. **Divorce:** EFFECT OF, ON MARITAL RIGHTS OF GUILTY PARTY: STATUTORY CONSTRUCTION. The effect of the provisions of section 2929, Revised Statutes 1899, is, in case of divorce, to forfeit all the guilty party's rights and claims under and by virtue of the marriage.

2. ———: ———: RIGHTS OF MARRIED WOMEN ACQUIRED BY GRANT: ANTENUPTIAL AGREEMENT. But in the case at bar, the plaintiff's demand against the estate of her former husband was acquired by the antenuptial agreement, that is, by grant, and not under and by virtue of the marriage.

3. ———: ———: MARRIAGE: CONSIDERATION. The marriage had to do with her rights under the agreement only as a part of the consideration.

4. ———: ———: ———. In the case at bar, the entire consideration was that the plaintiff should marry Bufe and waive her dower rights. For doing this he agreed that she should receive one thousand dollars cash, sixty days after his death, in case she survived him. After the instrument was executed and the marriage solemnized, she had completely performed on her part, and her right to receive the money at the time stated was perfectly vested, in the absence of evidence of a fraud on the deceased to induce him to make the contract.

Appeal from St. Louis City Circuit Court.—*Hon. Pembrook R. Flitcraft,* Judge.

AFFIRMED.

## STATEMENT OF THE CASE.

The object of this action is to secure an allowance in favor of respondent against the estate of F. W. Bufe, deceased, on the following antenuptial agreement: "Contract of Marriage: Articles of agreement made and entered into this eleventh day of October, A. D. 1888, between Franz Wilhelm Bufe, of the city of St. Louis, State of Missouri, of the one part, and Annie Bultmann of the city of St. Louis, and State aforesaid of the other part, in manner following, that is to say: The said Annie Bultmann, for the consideration hereunder mentioned, doth contract and agree to and with the said Franz Wilhelm Bufe that she, the said Annie Bultmann, shall and will marry and become the lawful wife of the said Franz Wilhelm Bufe on the conditions that the said Annie Bultmann's personal and real estate properties shall remain intact and be her own and sole property to be used by her as *feme sole,* the said Franz Wilhelm Bufe to waive in this instrument all right and title of the aforesaid Annie Bultmann's property as may be secured by him by the laws of the State of Missouri in marriage. The said Franz Wilhelm Bufe, in consideration of the fulfilling of the above contract by Annie Bultmann doth agree to cause the sum of one thousand dollars cash to be paid over to the said Annie Bultmann, sixty days after the demise of the said Franz Wilhelm Bufe, providing the said Franz Wilhelm Bufe makes his demise before the said Annie Bultmann, and the said Annie Bultmann doth waive all her right and title to dower as allowed her by the laws of Missouri, and accepting the one thousand

dollars cash in lieu thereof.

"In witness whereof, the said parties hereto set their hands and seals the day and year above written.

"Witness R. de Jong.

(Signed.)                    "FRANZ WM. BUFE,

ANNA BULTMANN."

The instrument was acknowledged and recorded. The parties married a day or two after its execution, lived together about four months, then separated. Bufe obtained a divorce on the ground of desertion. He possessed forty-five hundred dollars worth of property when he married the plaintiff, which he continued to own until his death.

*Lubke & Muench* for appellant.

(1) The marriage between claimant and Franz Wm. Bufe having been dissolved for the guilt of claimant, under the statute of Missouri, she forfeited "all rights and claims under and by virtue of the marriage." R. S. 1899, sec. 2929 (sec. 4508. R. S. 1889); Schuster v. Schuster, 93 Mo. 438; Biffle v. Pullam, 114 Mo. l. c. 53. (2) Where a marriage contract is executory in providing for the payment of money to the wife at a future time, and the contract, either in terms or by necessary intendment, bases the right to such payment upon the continuance of that relation until the husband's death, and where the wife immediately abandons such relation and deliberately violates the contract, she must be held to have forfeited her right to the stipulated sum. York v. Ferner, 59 Ia. 487; Schouler's Dom. Rel., sec. 183a; Mowser v. Mowser, 87 Mo. 437. (3) The case of Saunders v. Saunders, 144 Mo. 482, does not control the decision of the case at bar, because that was a case of jointure, whereby an interest in real estate was vested in the wife. Jointure must be a freehold estate in lands or tene-

ments, secured to the wife, to take effect upon the decease of her husband, and to continue during her life, at least unless she be herself the cause of the termination. Vance v. Vance, 21 Me. 364 and see definition of "Jointure," Cent. Dictionary. Claimant can not claim the stipulated sum in lieu of dower, because by her default she has forfeited all dower right. R. S. 1899, sec. 2947. Claimant is not entitled to this sum under section 2950, Revised Statutes 1899, because even under that section, personal estate mentioned in a marriage contract, to be a bar to dower, must be such personalty as has been received by the wife, not a merely executory promise.

*Rassieur & Rassieur* for respondent.

The vested rights acquired under an ante-nuptial contract, are not forfeited because of the subsequent rendition of a decree of divorce. The guilty party forfeits only "all rights and claims under and by virtue of the marriage." R. S. 1899, sec. 2929; Saunders v. Saunders, 144 Mo. 482; Kinzey v. Kinzey, 115 Mo. 406.

GOODE, J.—Appellant claims that the respondent's rights under the marriage settlement were forfeited by the decree divorcing them, on account of her misconduct. The statute relied on (Revised Statutes 1899, section 2929), will not, in our opinion, bear the construction sought to be placed on it by the appellant. The effect of its provisions is, in case of divorce, to forfeit all the guilty party's rights and claims under and by virtue of the marriage. But the plaintiff's demand against the estate was acquired by the antenuptial agreement, that is, by grant, and not "under and by virtue of the marriage." Kinzey v. Kinzey, 115 Mo. 496; Saunders v. Saunders, 144 Mo. 482. The marriage had to do with her rights under

the agreement, only, as part of the consideration for them. If she had refused to marry Bufe after its execution, it doubtless would have been defeated by failure of the consideration. The marriage, however, was only part of the consideration, although the fact on which all the rest turned. The entire consideration was that the plaintiff should marry Bufe and waive her dower rights. For doing this, he agreed that she should receive one thousand dollars cash, sixty days after his demise, in case she survived him. After the instrument was executed and the marriage solmenized, she had completely performed on her part and her right to receive the money at the time stated was perfectly vested. There is no evidence tending to prove respondent practiced a fraud on the deceased to induce him to make the contract. On a showing of that kind, a different result might be reached; but so far as the testimony discloses, the transaction was bona fide, and with the expectation on both sides, not only of marrying, but of living together permanently in conjugal relations. But the plaintiff did not formally agree to live with the deceased for a certain time. She agreed to marry him and to relinquish her claim to dower. As has been said, a fraudulent purpose on her part to marry and at once desert him, would probably be ground for relief in equity; but there is no such case here.

Carpenter v. Osborn, 102 N. Y. 252, construed an agreement made by a husband and wife with a view to their living apart but undivorced. Afterwards, the wife obtained a divorce on account of the gross misconduct of the husband. He then claimed that marriage was the gravamen of the separation agreement and that its annulment by the divorce necessarily destroyed the obligation of the contract. The court said *inter alia*: "There is no express or implied condition in the contract that the plaintiff should remain the wife of John Carpenter, but the obligation to pay interest was to continue uncondition-

ally during her natural life." Agreements like the one in question have been frequently considered by the courts, with much stronger provocation for defeating them than we have here, but they have always, we believe, been sustained except in York v. Ferner, 59 Ia. 487. That opinion cites no supporting precedents.

Babcock v. Smith, 22 Pick. 61, was where, by indenture, the husband and wife conveyed her real estate upon the trusts that the income should be paid to her during coverture and if she should survive him, the estate should be reconveyed to her, but if she died before him, the income should be paid to him during his life and at his death the estate was to be conveyed to her heirs. She afterwards procured a divorce, and a bill was brought to cancel the settlement and for a reconveyance of the property to her. The indenture which they executed recited an agreement made by the husband before the marriage, that his wife's real estate should be secured to her sole and separate use. It was contended on behalf of the plaintiff that the husband had no greater right by virtue of the indenture than he would have had without it and that the plaintiff would have been entitled to possession of her lands immediately after the divorce but for the indenture, and inasmuch as the contemplated nuptial relation which led to it had been destroyed, she was entitled to a reconveyance in spite of it. The court thought there was no testimony of fraud or deception having been practiced on the plaintiff or any coercion or undue influence; that the misconduct of the husband was a contingency which neither of the parties anticipated and produced a state of things such as naturally would cause her dissatisfaction, and subject the income of her property to a use which was not expected. The opinion then said: "The parties had their option to leave their property to the operation of the general principles of law, or to undertake to regulate and control it by special restrictions

and limitations. If they voluntarily and understandingly elected the latter, equity can not come to their relief. If they secure the advantages, they must also submit to the inconveniences of such a conventional disposition of the property. Here the wife has had, during her coverture, and is secure of having during her life, the income of her estate to her own separate use. She has it, too, secured eventually for the benefit of her heirs. 'She and they must submit to have the income go to her husband, notwithstanding his misconduct, during his life, should he outlive her."

In McGrath and Wife v. Pa. Co., 8 Phila. 113, Mrs. McGrath's former husband had settled a certain income on her for her natural life. The words of the settlement were: "For the use of his said wife, Caroline H. B. Cooper, for and during the full term of her natural life, so that said company, or the said Caroline H. B. Cooper or either of them, shall and may receive the same for the maintenance and support of the said Caroline H. B. Cooper, and that the receipt or receipts of the said Caroline H. B. Cooper, whether covert or sole, shall be sufficient discharges of the payment of the said income, as the same shall fall and become due." Subsequently the parties were divorced, by whose fault it does not appear, and Mrs. Cooper married McGrath. It was argued that her divorce and marriage terminated the annuity. The court said: "No such limitation or condition appears in the instrument, and as there was a sufficient consideration for the settlement when made, we see nothing that in the least affects its binding force. This principle is clearly asserted in Hill on Trustees, page 428. The text is that where the wife is entitled to a provision by virtue of a contract, whether contained in marriage articles or in a covenant or deed of settlement, it is clearly settled that the trust may be enforced in her favor, notwithstanding her adultery, and although she may be living apart from her husband.

Numerous English decisions are cited by the learned author.'' Blaker v. Cooper, 7 S. & R. 500, was where a bond was given by a husband for the use of his wife, conditioned to pay her sixty dollars per year during her natural life as alimony, she to live apart from her husband. She afterwards procured a divorce *a vinculo,* and married again. It was held that neither the divorce nor the marriage of the wife released the bond of the former husband.

In Galusha v. Galusha, 116 N. Y. 635, the parties had separated upon the wife's discovering certain offenses of her husband; a separation agreement was executed by the terms of which he agreed to convey to her certain property, to pay her a specified sum down and one hundred dollars a month during her life, all of which she agreed to accept in full satisfaction for her support and maintenance. The agreement gave her the right to continue it after the husband's death, if she would release all right to dower and claims of every kind against his estate. Subsequently she sued her husband for divorce. It was held the decree of divorce did not destroy the contract nor affect the wife's rights under it. The opinion, quoting from Carpenter v. Osborn, supra, says: "There was no agreement, express or implied, that the plaintiff should remain the defendant's wife; no attempt was made to shorten the period of payment should divorce or marriage thereafter result. It is written that the death of the wife shall constitute the event which shall terminate the agreement and the court will not attempt to read it as if it affirmed otherwise."

Fitzgerald v. Chapman, 1 Ch. D. 563, was a case in which by an antenuptial settlement, the property was vested in trust for the wife during the joint lives of herself and her husband, and after her decease for him for his life, with other provisions unnecessary to mention. The marriage was dissolved on her petition, and she thereupon filed a bill claiming to be absolutely

entitled to the trust fund. The Master of the Rolls went into the authorities at some length and dismissed the bill, holding that her husband's rights were not affected by the divorce.

It is impossible to distinguish the case at bar in principle from Kinzey v. Kinzey, and Saunders v. Saunders, supra. In fact, those cases appealed much more strongly for relief against the provisions of the contracts which were upheld, than does this one; particularly Kinzey v. Kinzey. Any court would have heeded the plaintiff's prayer in that instance, if it could have done so consistently with the law. The theory on which all the authorities proceed is, that there was a good and valid consideration for the agreement at the time it was made and that, therefore, in the absence of imposition, fraud or undue influence, it can not be defeated by untoward events occurring afterwards, which were not in the minds of the parties at the time, and which they did not provide should impair the obligations assumed.

In the present instance, the appellant insists that Mrs. Bufe's dower right was destroyed by the divorce and that, hence,. her rights under this agreement must fall with it, because it was executed in consideration of her dower being released. But this reasoning is wholly fallacious. . The plaintiff covenanted to relinquish a valuable estate in expectancy when she made the antenuptial contract, having, so far as the evidence discloses, no thought that she would subsequently destroy that estate by such conduct as would cause a divorce. Moreover, she agreed to do more than this; namely, marry Bufe. The contract remained executory in only one respect: the payment of the money to her as therein provided, in case she survived her husband. That contingency has now happened, and she is entitled to receive it. We agree with appellant's counsel, that the agreement did not create an estate of jointure, and it may be questionable whether it would have barred her dower

if she had continued to live with her husband until his death. That, however, does not stand in the way of her recovery. The marriage itself was a sufficient consideration for Bufe's promise, if no reference had been made to dower. Lionberger v. Baker, 88 Mo. 447; Wood and Houston Bank v. Read, 131 Mo. 553.

The judgment is affirmed. All concur.