## LEAVY v. COOK et al., Appellants.

### Division One, December 24, 1902.

1. **Antenuptial Contract:** JOINTURE: MISCONDUCT OF WIFE: FORFEITURE. If the wife was guilty of desertion and adultery, and there was no reconciliation and no return to her husband, and if the interest she acquired in her. husband's estate under an antenuptial contract was a jointure, that interest was forfeited by her misconduct, although she was not divorced. This view is founded on the statute, which must be read into the contract, and which says that for such misconduct the wife "shall be forever barred of her jointure."

2. ————: ————: LEGAL AND EQUITABLE: EMBRACED WITHIN STATUTE. The Missouri statutes embrace technical legal jointures, as well as equitable jointures, and make either a bar to dower.

3. ————: ————: EQUITABLE: UNDETERMINED INTEREST. If the antenuptial contract does not convey to the wife a certain interest in specific property in lieu of dower, but takes the form of an agreement between her and her husband looking to the share she is to take in his estate at his death, whatever that estate may be, the provision thus made comes under the class of equitable jointure.

4. ————: JOINTURE: PROVISION FOR WIFE. An antenuptial contract. to the effect that the widow at the death of her said husband "shall receive and accept as her full dower and share of all real and personal property of which the said husband shall die seized, a child's part," does not create a vested estate *in praesenti* in the wife, nor give her any specific property, but looks forward to the time when the wife is to become a widow and the estate is to be divided between her and her husband's heirs, at which time she is to have in exchange for the dower which the law would have cast upon her by reason of the marriage, the provision her husband made for her by the contract. If this provision constitutes a jointure, within the meaning of the statute, then that jointure was forfeited if she was guilty of desertion and adultery without reconciliation; if the statute refers only to technical legal jointure, then, under the law governing:

Leavy v. Cook.

equitable jointure, when she comes into court asking to have this equitable jointure given to her, she must bring the dower which the law gave her and lay it down in exchange. But if, when she so comes, she has no dower to surrender, because, as the guilty party in a divorce suit, that has been taken from her under another statute (secs. 2929 and 2947, R. S. 1899), she can not invoke the application of the equitable principle in her favor. Hence, in any view of the case, her rights under such a contract have been forfeited, by her misconduct under one statute, or by the divorce under the other.

Appeal from Linn Circuit Court.—*Hon. Jno. P. Butler,* Judge.

REVERSED AND REMANDED.

*O. F. Libby, A. W. Mullins* and *B. F. Reinberger* for appellants.

(1) Plaintiff's right was founded upon a marriage contract or settlement in contemplation of marriage. It was incumbent on her to show that she had complied with its terms on her part, and it was error to strike out that portion of defendants' answer pleading non-performance, abandonment and adultery. York v. Fenner, 59 Iowa 487, 13 N. W. 630; 1 Washburn's Real Prop. (3 Ed.), p. 227. (2) Adultery is a complete defense, and barred respondent's rights to any claim whatever in her deceased husband's estate, and may be shown without any formal decree of divorce upon a trial in an action of this kind. 1 Washburn's Real Prop. (3 Ed.), p. 227; 1 Sharswood & Budd, Leading Cases, p. 385. (3) By the common law no woman can have dower in her husband's lands unless the coverture continues up to the time of his death and she be his actual wife. The divorce pleaded in defendant's answer was a valid and binding judgment fixing the status of the plaintiff herein as to her right under the contract. She was not the wife of Joseph Leavy at the time of his death. 2 Scribner's Dower, p. 514, sec. 14; Hunt v. Thompson, 54 Mo. 152; McAlister v. Novenger, 54 Mo. 251. (4) The decree of divorce pleaded in that part

of the answer stricken out was a valid and binding judgment, and while it remains in force the plaintiff can not maintain this action, and the court erred in striking out that part of defendant's answer. Gould v. Crow, 57 Mo. 200; DeGraw v. DeGraw, 7 Mo. App. 121; 2 Bishop, M. & D. (5 Ed.), secs. 155 to 170. (5) When by the terms of an antenuptial contract a certain sum is provided for the wife to be paid out of the personal estate of the husband as a substitute or equivalent for dower, in case she survives him, a divorce granted to the husband for the fault or misconduct of the wife will bar any claim against the husband's estate. Lecompte v. Wash, 9 Mo. 558; Jordan v. Clark, 81 Ill. 465; Clark v. Lott, 11 Ill. 104.

*C. C. Bigger* for respondent.

(1) Under the marriage contract between plaintiff and Joseph Leavy, immediately upon their marriage, plaintiff became entitled to a share in all the estate of which said Leavy should die seized, equal to a share of a child of said Leavy by his former marriage. This interest was in lieu of dower, and was a vested interest. Anglade v. St. Avit, 67 Mo. 434; Bishop's New Work on Mar. and Div., sec. 1623. (2) The interest which plaintiff took in the lands of which Joseph Leavy died seized, under and by virtue of the marriage contract, was by purchase, for a valuable consideration, which was the marriage, and was not forfeited by her subsequent conduct nor by reason of the divorce obtained by said Leavy from plaintiff, for desertion. Kinzey v. Kinzey, 115 Mo. 496; Saunders v. Saunders, 144 Mo. 482; Bishop's New Work on Mar. and Div., sec. 1623.

VALLIANT, J.—Suit for partition of lands descended to the heirs of Joseph Leavy, deceased. Plaintiff claims to be the widow of decedent and the defendants are his heirs at law, the administrator of his estate, and several parties who hold mortgages on the land. Plaintiff avers that she is the owner of an undivided

one-seventh of the land described in the petition by virtue of an antenuptial contract with her late husband, whereby, in consideration of the marriage then in contemplation, and which was thereafter duly consummated, it was agreed that plaintiff should have an interest in her husband's estate at his death equal to the share of a child of the husband by his former marriage, in lieu of dower.

The answer of the heirs admits the marriage and the due execution of an antenuptial contract, the terms of which are more specifically set out than in the petition; then it pleads in avoidance that shortly after her marriage the plaintiff committed adultery, and that she abandoned and refused to return to her husband and never lived with him thereafter; that in 1895 the husband obtained a decree of divorce from her in the United States District Court of the Fifth District of Oklahoma Territory, which court had jurisdiction of the subject and of the parties, on the ground of desertion. The court on motion of the plaintiff struck out those pleas relating to the misconduct of the wife and the divorce, on the ground that they constituted no defense and were mere surplusage. To which action the defendants excepted. Upon the trial the antenuptial contract was in evidence which was as follows:

"Articles of agreement between Joseph Leavy, of Linn county, Missouri, party of the first part, and Mary Iott, of the county of Linn and State of Missouri, party of the second part. Witnesseth: Whereas a marriage is shortly to take place between said parties, it is therefore hereby agreed by and between the parties hereto that the said Mary Iott, when the wife of the said Joseph Leavy, shall at the death of the said Joseph Leavy receive and accept as her full dower and share of all real and personal property of which the said Leavy shall die seized a child's part, that is to say, the said Mary Iott as the wife of said Leavy, shall, in any distribution of the property of said Leavy, share alike with the several children of the said Leavy by his former wife, and to the faithful performance of this contract the said

Joseph Leavy hereby for himself, his heirs, adminis-trators and assigns binds all his said property.

"In witness whereof we have hereunto set our hands and seals this 18th day of January, 1892.

"JOSEPH LEAVY,    (SEAL).

"MARY M. IOTT,    (SEAL)."

This contract was duly acknowledged and recorded.

The court rendered judgment for the plaintiff and the defendants appeal.

The only question in the case is, did the court err in striking out the pleas relating to the misconduct of the plaintiff and to the divorce?

The ruling of the court in this respect is defended on the authority of the decisions of this court in Anglade v. St. Avit, 67 Mo. 434; Kinzey v. Kinzey, 115 Mo. 496; and Saunders v. Saunders, 144 Mo. 482.

The first of those cases was an action of ejectment in which the plaintiffs claimed title under their mother whose rights arose out of an antenuptial contract. The language of the contract was: "That said Miss Mar-garet Frazier, the intended wife of said party of the first part, St. Rose Beaubran Anglade, is to have the one-third of the one-half of the estate of her said in-tended husband, absolutely and in full property in lieu of dower in his estate; she the said Margaret, hereby agreeing to and accepting the same. . . . That the said one-third of the one-half of the estate of the said St. Rose Beaubran Anglade, hereby given to his said intended wife, is to be in full of dower and any claim upon his es-tate." The question was, were the words there em-ployed sufficient to vest the title to the land in the woman immediately on the consummation of the mar-riage? The court held that although more apt words could have been used to express the purpose, yet suf-ficient was said to show that it was the intention of the parties to vest the title in the woman immediately on the occurring of the marriage. In that case the land in question was owned by the husband at the date of the contract and marriage, burdened with a mortgage which

the husband subsequently paid, and thereafter placed on the land a second mortgage and the point decided was that the wife's title was superior to the second mortgage. The court said in reference to the first mortgage that she took it *cum onere* and that if there had been a sale under foreclosure it would have swept away every vestige of her interest, but as it was paid by the husband, whose debt it was, her title was left clear. Thus it will be seen that the court in that case, from every point in view, treated the antenuptial contract as a deed conveying *in praesenti* title to the land. That case presented no question as to what interest the widow would have in her deceased husband's estate; it was not a suit between her and the heirs of her deceased husband in regard to the share she was entitled to upon the death of her husband. The interest she was entitled to was hers in his lifetime.

In Kinzey v. Kinzey, the husband, during the marriage and while he and his wife were living together, bought certain real estate and caused the deeds to be made to her and "the heirs of her body begotten by Christian Kinzey, her present husband, forever." Subsequently the husband obtained a divorce from the wife on the ground of her adultery and after that filed a suit against her and her children to divest her and them of the title, basing the suit on section 4508, Revised Statutes 1889: "In all cases of divorce from the bonds of matrimony, the guilty party shall forfeit all rights and claims under and by virtue of the marriage." But this court, per BRACE, J., said: "While the title of Mrs. Kinzey and her children to the property in question was acquired during the marriage and indirectly from her husband and she was found guilty of adultery in the divorce suit, yet these facts did not operate a forfeiture of any of her rights to the property, for the simple reason that those rights were vested rights, acquired by grant, and not 'under and by virtue of the marriage,' and upon which the sentence of divorce had no effect."

In Saunders v. Saunders, the husband conveyed certain lands to one Crump for the purpose of having

him convey it to the wife of Saunders in lieu of her dower, which was done. Subsequently the husband obtained a divorce from his wife on the ground of desertion and after that he brought suit against her to cancel the deeds to Crump and to her. The theory of the plaintiff in that suit was that as the land had been conveyed to and accepted by her in lieu of her dower and as, by her misconduct and the decree of divorce, she had forfeited all right to dower, there was left nothing in the way of consideration to support the deeds. But this court held that the deeds passed the title and for a consideration that was valid at the time and that title was not affected by the statute that declared dower forfeited by the divorce. On that point the court, per MARSHALL, J., said: "The consideration being good at the time the estate is created, does not fail because the husband is disappointed in his expectations that she will be a faithful wife."

The principles laid down in those three cases were: first, where the antenuptial contract amounts to a conveyance *in praesenti* to the wife of a certain interest in real estate then owned by the husband in consideration of the relinquishment of her right to dower, the interest so conveyed becomes vested and is not affected by the subsequent deed of the husband; second, where the husband during marriage buys land and causes the title to be conveyed to his wife, the title becomes vested in her and is not forfeited because she is subsequently convicted of adultery and her husband obtained a divorce on that ground; third, where the husband causes land to be conveyed to the wife, during the marriage, as jointure, she does not forfeit her title thereto by decree of divorce obtained by her husband on the ground of desertion.

If the principles laid down in the first and second of those cases be carried no further than there applied, they would avail the plaintiff nothing here, unless the antenuptial contract under which she claims had the effect to vest in her a title to an estate in the land described in the petition, and even if the title she acquired

be adjudged to be like that in the first case, still the decision in the third case leaves open the question whether her adultery and desertion do not operate to produce the forfeiture.

If the antenuptial contract now under consideration created a jointure, the decision in the Saunders case is authority for saying that the jointure was not forfeited by the decree for divorce on the ground of desertion, but it is not authority for saying it was not forfeited on the ground of adultery combined with the desertion.

At the date of the events now in question there were, and still are, two statutes on the subject: Section 4526, Revised Statutes 1889 (Idem, sec. 2947, R. S. 1899): "If the husband be divorced from the wife, for her fault or misconduct, she shall not be endowed," and section 4532, Revised Statutes 1885 (Idem, sec. 2953, R. S. 1899): "If a wife voluntarily leave her husband and go away and continue with an adulterer, or, after being ravished, consent to the ravisher, she shall be forever barred from having her jointure or dower, unless her husband be voluntarily reconciled to her, and suffer her to dwell with him." Under the first of those two sections the wife loses her right to dower if the husband obtains a divorce for her fault on any ground; under the second she loses her jointure or dower for desertion and adultery although there be no divorce.

This last-quoted section has been construed by this court to mean that voluntary separation and subsequent adultery of the wife, not followed by reconciliation were sufficient to cause a forfeiture of dower although all the circumstances mentioned in the statute do not concur. [McAlister v. Novenger, 54 Mo. 251; Payne v. Dotson, 81 Mo. 145.] Under that statute it is the adultery and the voluntary separation that causes the forfeiture, and no decree of divorce is necessary. [1 Washburn on Real Prop. (6 Ed.), p. 208.]

That statute is borrowed in the main from the old English statute: "If a wife willingly leave her husband and go away, and continue with her avourterer,

she shall be barred forever of action to demand her dower that she ought to have of her husband's land, if she be convicted therefor, except that her husband willingly reconcile her, and 'suffer her to dwell with him, in which case she shall be restored to her action." [Westminster 2, chap. 34, 13 Edw. I., c. 34.] It is in reference to the English statute that Washburn says: "A wife does not at law lose her jointure, as she would her dower, by eloping and living in adultery." [1 Washburn on Real Prop. (6 Ed.), p. 283.] But the main difference between our statute and the English enactment is that the latter declares that for the misconduct specified the wife shall forfeit her dower, whilst ours declares that she shall forfeit her jointure or dower. Therefore, if the plaintiff in the case at bar was guilty of desertion and adultery and there was no reconciliation and no return to her husband, and if the interest she acquired in her husband's estate under the antenuptial contract was a jointure, that interest was forfeited by her alleged misconduct. And this would be so even if the right so acquired possessed in all other respects and as to all other claims the character of a vested estate, because the statute itself is to be read into and construed to be a part of the contract. As was said in the Saunders case, the consideration she gave for the interest she acquired, that is, the relinquishment of her dower right, was a sufficient consideration at the time to support the jointure, and her estate thereby acquired would not become forfeited because of an after fact which would have barred her right to dower if it had not been before relinquished. Therefore, as was said in that case, although her dower would have been forfeited by the divorce on the ground of desertion because the statute, section 4508, Revised Statutes 1889, declared that "if the husband be divorced from the wife for her fault or misconduct, she shall not be endowed," yet under that statute alone she would not forfeit her jointure. But, for desertion and adultery, even without divorce, under section 4532, Revised Statutes 1889, she forfeits her jointure although the contract

by which it was settled on her was supported by a valuable consideration. In such case the jointure is forfeited, not because the consideration upon which the contract was founded, fails, but because the statute, read into the contract, expressly declares that for such misconduct the wife "shall be forever barred from having her jointure."

Did the antenuptial contract in the case at bar create a jointure in the plaintiff? We read in the books that jointures are of two kinds, legal and equitable. The legal jointure was the invention of the ancient conveyancers, designed to remove the restraint on alienation of his lands by the husband caused by the wife's inchoate dower. It derived its name from the character of the conveyance which was originally used for this purpose; that was a conveyance in joint tenancy to the husband and wife, carrying of course the common-law right of survivorship, the consideration of which was the relinquishment of the wife's dower. But jointure was not long confined to a joint estate; it embraced also estates limited to the wife alone. [1 Washburn Real Prop. (6 Ed.), sec 496.]

The legal jointure, however, was an estate in the wife in certain land to take effect, in her own right, if not before at least on the death of her husband.

To constitute a legal jointure there were several technical requirements which were deemed absolutely essential. The consequence was that it not infrequently resulted that in attempting to create this estate the attempt failed because of the absence of one or more of these requirements. [1 Washburn Real Prop. (6 Ed.), sec. 495.] This led to the assumption of jurisdiction of the subject by courts of equity and the invention of what was called equitable jointures, which have been thus defined: "When the foregoing requisites are not all found in the provision made by the husband for the wife, by will or otherwise, and yet it is manifest that the husband did not intend her to have the provision and her dower also, she will be compelled, in equity, to elect between them, and this is known as equitable jointure.

Founded, as it is, on the intention of the husband, as disclosed in the will or other instrument containing the provision, it often involves very intricate considerations.'' [2 Minor's Inst. (2 Ed.), p. 153.] The rule at law was that if the provision made for the wife, though intended to bar her dower, did not cover all the characteristics of legal jointure, it did not effect a bar and the result was she had both. But this being deemed inequitable, the courts of equity interposed and required her to elect. This election took place when the right to demand dower matured, that is, on the death of the husband. [Logan v. Phillips, 18 Mo. 22.]

Washburn says: ''The difference between this equitable and a legal jointure is, that the latter is not a contract for a provision, but a provision is made; while the former proceeds on the idea of a contract on the part of the wife to accept a certain provision in lieu of dower.'' [1 Washburn Real Prop. (6 Ed.), sec. 506.] The difference there indicated is the difference between an estate created and an agreement to create an estate. The text-writer just quoted also says: ''If the widow is evicted from her jointure lands by defect of title, she may be remitted to her right of dower *pro tanto* or in the whole, as the case may be, out of her husband's estate.'' [Id., sec. 499.] Again he says, section 509: ''The effect of being evicted from an equitable jointure by a superior title seems to be the same as in the case of a legal one, giving the widow a right to claim her dower in whole or *pro tanto,* as the case may be, out of her husband's other estate. And an alienation, by the husband, of the fund out of which the jointure was to arise, will be deemed an eviction by the same, and let her in for her dower.''

Id., sec. 510: ''In accordance with this doctrine, where a contract before marriage fixes the share the wife was to take, and excluded her from all other parts of the estate, and this contract was given up to the husband during coverture and by him destroyed, it was held that she was remitted to her right of dower. So, where a wife before marriage agreed to claim no part of her

husband's then estate, she was held to be remitted to her right of dower by his abandoning her and violating his duties of husband toward her.''

The following are the cases cited by the author in support of the text: Buckinghamshire v. Drury, 2 Eden 60, 68; Beard v. Nutthall, 1 Vern. 427; Power v. Sheil, 1 Molloy 296; Gangwere's Estate, 14 Pa. St. 417; Spiva v. Jeter, 9 Rich. Eq. 434.

Although this subject, as we shall presently see, is covered by our statute, yet it has been necessary to look at the law as it was before to assist us in giving the proper application of the statute to the facts of this case.

From the foregoing review of the law we draw the conclusion that if the antenuptial contract does not convey to the wife a certain interest in specific property in lieu of dower, but takes the form of an agreement between the parties looking to the share that she is to take in her husband's estate at his death, whatever the estate may then be, the provision thus made comes under the class of equitable jointures, is in the nature of an agreement to be executed in the future, and is governed by the principles which courts of equity have applied to such contracts. And, as we have seen, equity pursues in such case the analogy of the law. If at law, through the husband's act, the wife is evicted of her jointure lands, she is remitted to her dower. If by his fault the contract is destroyed, or the personal property she was to have has been dissipated, a court of equity will allow her to have her dower. In other words, both at law and in equity if the wife by the husband's act is unable to get what the contract aimed to give her, at the time it was due, then she was to have her dower. All this reasoning assumes that when the time arrives for her to come into the enjoyment of her jointure she has her dower to fall back upon if the jointure is not forthcoming, and it recognizes that she has something to give in the exchange.

This difference between legal and equitable jointure, or other provision made in lieu of dower, is also

shown in the court procedure applicable to each.   Legal jointure was a complete plea in bar to the action for dower.   This was so only because the English statute made it so.   But unless the estate created for the widow possessed all the elements of a legal jointure it did not, at law, bar her dower even though she had by solemn contract before marriage so agreed, because, it was said, she could not so dispose of a right she did not then and might not ever have.   So she was left at law free to take the provision made for her and also maintain her action for dower.   But in such case a court of equity intervened and enjoined her from prosecuting her action at law, upon the principle that she should not have both the provision intended to be in lieu of dower and the dower also.   [1 Washburn Real Prop., sec. 508.] Thus we see that whenever the provision was not a technical legal jointure, the strict rules of the law were inadequate to reach the ends of justice and therefore the rights of the parties interested were adjusted in a court of equity and on the broad principles of equity.   In that adjustment the widow came into court bringing that which was hers by the law, her right of dower, and that she laid down in exchange for the provision otherwise made for her, and if as we have seen the provision had been destroyed or impaired by the husband's misconduct, she was compensated in dower or otherwise out of the estate.   The principle of rendering up the one as the equivalent of or compensation for the other runs through all the discussions of equitable jointure.

Our statutes on this subject are as follows:

"Sec. 2950.   If any woman, prior to and in contemplation of marriage, shall, in agreement or marriage contract with her intended husband, or other person, receive any estate, either real or personal, to take effect after the death of her husband, by way of jointure, as a provision for her support during life, and expressed to be in full discharge of all her claim of dower, such estate shall be valid, and a bar to dower in the estate of her husband.   When any lands have been or hereafter shall be conveyed to the husband and wife, or to any other

person and their heirs, and to the use of the husband and wife, or to the use of the wife, for the jointure of the wife, every such married woman having such jointure made shall not claim any dower in the residue of the lands of which her husband was at any time seized.

"Sec. 2951.   If any deed of conveyance, assurance, agreement or contract for jointure be made after marriage, or be made before marriage and during the infancy of the wife, in either case the widow may, at her election, renounce her jointure, and have dower.   In all cases, if the title to the estate settled on the wife as her jointure shall fail, or she be evicted from or can not recover such estate, she shall have dower in the estate of her husband; or, if the title fail as to part only, the deficiency shall be made up of her husband's estate.

"Sec. 2952.   When any deed, conveyance, assurance, agreement or contract for jointure, in lieu of dower, shall, through any default, fail to be a legal bar to dower, and the widow, availing herself of such default, shall demand her dower, then the estate and interest so conveyed to such widow shall cease and determine.

"Sec. 2953.   If a wife voluntarily leave her husband and go away and continue with an adulterer, or, after being ravished, consent to the ravisher, she shall be forever barred from having her jointure or dower, unless her husband be voluntarily reconciled to her, and suffer her to dwell with him."

These are the same as sections 4529, 4530, 4531 and 4532, Revised Statutes 1889, which were in force when the contract in question was made.

These statutes cover technical legal jointures as well as equitable jointures and make either a bar to dower, and the section last quoted declares that the misconduct of the wife therein specified will bar her jointure also.

The contract in the case at bar is that the widow "shall at the death of the said Joseph Leavy receive and accept as her full dower and share of all real and

Vol 171 mo—20.

personal property of which the said Leavy shall die seized, a child's part, that is to say, the said Mary Iott as the wife of the said Leavy shall, in any distribution of the property of said Leavy, share alike with the several children of the said Leavy by his former wife.''

There was no estate *in praesenti* vested in the wife by that contract, as in Anglade v. St. Avit, supra, nor was there any specific property conveyed to her as in Kinzey v. Kinzey, supra, nor land conveyed to the wife in fee on the termination the husband's life estate reserved by him, as in Saunders v. Saunders, supra.

Therefore the doctrines of those cases do not avail the plaintiff here; besides the wife in the Saunders case did not fall within the condemnation of section 2953 above quoted.

This contract looks forward to the time when the wife is to become a widow and when the estate is to be divided between her and the heirs of her husband. Until then there is no title to any particular property vested in her. When that event is reached she is to have in exchange for the provision which the law made for her, the provision the husband by the contract made for her. If the latter constituted a jointure within the meaning of that word as used in section 2953, then if the plaintiff has been guilty of the misconduct in that section mentioned, her jointure is forfeited. If it be contended that the word ''jointure'' in the statute is used in the sense of technical legal jointure and, therefore, does not apply to the estate the wife is to take under this contract, then her rights must be adjusted on the broad principles of equity; and when she comes into court asking to have this equitable jointure given to her, she must bring what the law gave her and lay it down in exchange. But if when she comes she has already parted with what the law had provided for her and has nothing to surrender in exchange for what she asks, the principle of equity, on which alone she must rely, will not sustain her claim.

By section 2929, Revised Statutes 1899, in case of divorce ''the guilty party shall forfeit all rights and

claims under and by virtue of the marriage." And by section 2947, "If the husband be divorced from the wife, for her fault and misconduct, she shall not be endowed." Therefore, this plaintiff by the decree of divorce on the ·ground of desertion was not entitled, on the death of her husband, to dower in his estate. She had, therefore, nothing to surrender in exchange for the equitable provision.

If, therefore, what she now claims is jointure, she has forfeited all right to it under section 2953, if she has been guilty of those acts which are charged against her in those parts of the answer struck out, and if it is not jointure then the forfeiture of her dower in consequence of the divorce, places her in a position in which the equitable principle she must invoke can not be applied to her case.

In any view that may be taken of the contract her rights under it are forfeited if the statements in that portion of the answer struck out are true.

The court erred in sustaining the motion to strike out parts of the answer and for that reason the judgment is reversed and the cause remanded to the circuit court to be retried according to the law as herein declared. All concur.